650 F.2d 30
 8 Fed. R. Evid. Serv. 529
 Paul M. ZUKOWSKI and Ruth E. Zukowski, Appellees,
v.
Dwight D. DUNTON, Jr., Appellant,
and
Nancy Lee Dunton, Defendant.
Paul M. ZUKOWSKI and Ruth E. Zukowski, Appellees,
v.
Nancy Lee DUNTON, Appellant,
and
Dwight D. Dunton, Jr., Defendant.
 Nos. 80-1319, 80-1320.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 2, 1981.
Decided May 21, 1981.
Rehearing Denied June 19, 1981.
 
 Ronald P. Maddox, Fairfax, Va., Arthur Lowy, Arlington, Va., for appellants.
 James W. Respess, Frederick, Md., for appellees.
 Before WINTER and HALL, Circuit Judges, and MICHAEL*, District Judge.
 K. K. HALL, Circuit Judge:
 
 
 1
 Paul and Ruth Zukowski, Maryland residents, sued Dwight and Nancy Dunton, Virginia residents, for specific performance of oral contracts for the transfer of stock in a corporation and for the transfer of an interest in real property. The district court, sitting without a jury, found for the Zukowskis and ordered Dwight Dunton to transfer 50% of the stock in Rink, Incorporated (Rink, Inc.) to them. The court further orderd both Duntons to grant the Zukowskis a 50% interest in the land. On appeal, we affirm the decision of the district court, although not entirely for the reasons stated in its opinion.
 
 
 2
 Paul Zukowski, a champion roller skater, envisioned a tremendous financial potential in operating a roller skating rink in the Washington, D. C. area. While he had the technical expertise to operate the business, he lacked capital. He approached Dwight Dunton, his business associate in a jointly-owned plastics molding business. When Dunton agreed to the venture, Paul Zukowski enlisted the aid of a real estate agent to locate land in Maryland for the business.
 
 
 3
 An appropriate tract of land was found at the Penn Beltway Industrial site in Maryland. In March, 1973, Dwight Dunton and Paul Zukowski signed a real estate sales contract which made both parties equally liable for the contract price. At the closing, Dwight and Nancy Dunton actually made the down payment, secured the necessary loan, signed the promissory note, and paid the closing costs. Because of their considerable financial interest in the land and in order to secure certain tax advantages, only the Duntons were named on the Deed as grantees. The land was deeded to them as tenants in the entirety in September of 1973.
 
 
 4
 According to the district court's findings, the activities of the parties culminated in two oral contracts, one in October and one in December, 1973. In the October contract, the parties agreed to form a corporation to operate the rink. Dwight Dunton was to provide the capital for the corporation while Paul Zukowski was to provide the management services; each would own 50% of the stock in the corporation. In December of 1973, they further agreed that Dunton would supply the capital to erect a building upon the previously purchased land while Zukowski would provide services as manager, skate expert and construction supervisor. According to the terms of this contract, the Zukowskis would receive a one-half interest in the land and building after the Duntons recouped their investment in this property and after the Zukowskis paid the Duntons $50,000 from their share of the rink proceeds.
 
 
 5
 Construction of the rink began in January of 1974 and was completed in August, 1974. The Duntons handled all the financial arrangements, including negotiation of a construction loan and payment of significant cost overruns from their personal funds. Paul and Ruth Zukowski were involved in every phase of the construction, and spent many hours managing the rink after it opened. Soon after the opening the parties formed the corporation contemplated in the October, 1973, oral contract, Rink, Inc. The record indicates that Dwight and Nancy Dunton were directors, but it is unclear whether Paul Zukowski was a director. Corporate tax records show that Dwight Dunton was president and Paul Zukowski was the vice-president of Rink, Inc. To date the corporation has never issued stock.[1]
 
 
 6
 By late 1974, Paul Zukowski had performed his part of the October bargain for one-half of the corporation and began asking Dwight Dunton to issue his stock. Dunton did not transfer any stock, but kept stalling Zukowski with promises that the stock would eventually be issued to him.
 
 
 7
 Meanwhile, the skating rink was very successful. The Duntons soon recouped their investment in the land and building and by 1976 the Zukowski paid the Duntons $50,000, thereby fulfilling the conditions of their December, 1973, agreement. However, the Duntons refused to transfer to the Zukowskis their one-half interest in the property.
 
 
 8
 Beyond the activities of Rink, Inc., the two men had a strained business relationship. A flood had destroyed their jointly-owned plastics business in 1972. While attempts were being made to salvage it, Paul Zukowski took $3,100 worth of equipment from the firm and began his own company in direct competition to their jointly-owned business. To make matters worse, Dwight Dunton alone had to make the payments on a $100,000 Small Business Administration loan granted to the jointly-owned business. After Rink, Inc. was established, Dunton and Zukowski opened yet another roller rink in Shady Grove, Maryland. Zukowski there wrongfully withdrew $6,000 from the new corporation, leaving Dunton responsible for $18,000 in skate rental charges and approximately $51,381.64 in rent overdue, despite the fact that both parties co-signed the leases.[2]
 
 
 9
 In 1978, the Zukowskis sued the Duntons for breach of the oral contracts to transfer 50% of the stock and the property. The district court found that Dunton had held the stock in constructive trust for Zukowski since 1974 and ordered him to transfer one-half the stock to the Zukowskis, and also ordered the Duntons to convey 50% of the property to the Zukowskis. The Duntons appeal.
 
 
 10
 The appellants have made eleven assignments of error, many of which are frivolous and deserve no more than passing mention. Particularly meritless and ripe for summary disposal are the claims that an oral contract was not asserted in the original complaint, that specific performance was not requested, that the pre-trial order did not accurately reflect the Zukowski trial exhibits, and that it was erroneous to order a corporate accounting which uncovered prejudicial evidence. We find it unnecessary to comment upon all of the appellant's multiple objections.
 
 
 11
 Dwight Dunton asserts that the oral contract between him and Paul Zukowski for the transfer of the land and building is unenforceable under the statute of frauds. The district court found that Zukowski fulfilled his obligations under the contract, thus constituting partial performance sufficient to take the contracts outside the statute of frauds. Specifically, the court found that Paul and Ruth Zukowski were involved in all phases of construction and operation of the rink. In addition, Paul Zukowski paid Dunton the requisite amount after the Duntons had recouped their investment from the proceeds of Rink, Inc. In exchange for this performance, the Zukowskis became entitled to receive one-half interest in the land and building. Maryland law permits part performance of an oral contract for land to satisfy the statute of frauds when the performance consists of services. Mannix v. Baumgardner, 184 Md. 600, 42 A.2d 124 (1945).[3] Zukowski's significant performance in operating the rink is sufficient to make the contract enforceable under this theory.
 
 
 12
 Nancy Dunton separately argues that she should not be held responsible for the obligations of Dwight Dunton. Yet both are directors in Rink, Inc. and the land upon which the roller rink is built is titled in both names as tenants in the entirety. While it is true, as counsel for appellants points out, that tenants in the entirety are not necessarily agents in business deals, it is also true that additional circumstances may indicate the existence of an agency relationship. As the Maryland Court of Appeals has stated:
 
 
 13
 An agency relationship between husband and wife will not be established merely by virtue of their marriage. (citations omitted) However, this is not to say that such relationship cannot be established by other facts and circumstances.
 
 
 14
 Wohlmuther v. Mt. Airy Plumbing and Heating, 244 Md. 321, 223 A.2d 562 (1958).
 
 
 15
 The facts and circumstances of Nancy Dunton's involvement are sufficient to prove agency. She acted with her husband as agent in several other ventures, jointly used the Rink, Inc. funds, recouped her portion of the joint investment, and was a director in the company. All of these activities are probative of her agency relationship with her husband. Thus, we agree with the district court that Nancy Dunton should be required to transfer the land along with her husband, Dwight.
 
 
 16
 Dwight Dunton also urges us to overturn the judgment below because the district court permitted evidence of a prior misdemeanor conviction for willfully failing to provide information for income tax purposes to be used for impeachment purposes. Such convictions have been held admissible for impeachment purposes as evidence of dishonesty under Fed.R.Evid. 609(a)(2). United States v. Klein, 438 F.Supp. 485 (S.D.N.Y.1977). We therefore conclude that Dunton's willful failure to give tax information was sufficiently reprehensible to meet the exception of Rule 609(a)(2).
 
 
 17
 Dwight Dunton next relies upon the statute of limitations as an affirmative defense against Zukowski's contract claim for one-half of the Rink, Inc. stock. The Virginia statute of limitations provides that the limitation period for actions for breach of a verbal agreement is three years unless the contract is governed by the law of another state. Va.Code Ann. 8.01-247. Since this contract is governed by Maryland law, we must look at the Maryland statute of limitations. Maryland law requires that contract claims be filed within three years of the date the cause of action occurs. Md.Cts. & Jud.Proc. Code Ann. § 5-101. Dunton insists that the cause of action for the breach of contract to transfer stock arose in 1974 when the corporation was formed. We disagree. Dwight Dunton continually promised Paul Zukowski that the stock was forthcoming, and in reliance thereon Zukowski did not bring suit. Because Dunton acknowledged the validity of Zukowski's claim in their conversations and stated an intention to give him the stock, and because Zukowski relied upon this representation and did not take legal action, Dunton is equitably estopped from asserting the statute of limitations defense. Chandlee v. Shockley, 219 Md. 493, 150 A.2d 438 (1959).
 
 
 18
 Although the statute of limitations defense to Zukowski's stock claim is inapplicable, there is a problem with the district court's resolution of the contract dispute. The district court, in resolving the statute of limitations defense, found that Dwight Dunton possessed all of the stock of Rink, Inc. The court found that he held 50% of this stock in a constructive trust for Zukowski and ordered Dunton to transfer one-half of the stock to Zukowski. Yet the record indicates that Rink, Inc. has never issued stock. If stock was never issued, Dunton could not possibly hold any stock for himself or for Zukowski. Thus, the constructive trust found by the district court had no corpus and did not exist.
 
 
 19
 In fashioning relief for Zukowski, we are limited by the fact that Rink, Inc. is not a party to this action. Maryland law states that a corporation is an indispensable party in an action to compel the issuance of stock. Rowe Co. v. Rowe, 154 Md. 599, 141 A. 334 (1928). Because the corporation is not a party to the action, we cannot compel it to issue stock. The record does not disclose what ownership interest the Duntons have in the corporation or the stock. Therefore, the relief that can be granted is limited to ordering the Duntons to transfer to the Zukowskis one-half of their ownership interest in Rink, Inc., whatever interests they may have.
 
 
 20
 Finally, appellants assert that the equitable doctrine of clean hands prevents specific performance because Paul Zukowski defrauded Dwight Dunton on some other business matters. However, to bar recovery under the clean hands doctrine, the plaintiff's wrongful action against defendant must result from the same transaction. 30 C.J.S. Equity § 98 (1965). Here the cause of action in question concerns Rink, Inc. and the business of operating a roller rink. Any business deals between the two parties involving other ventures are not sufficiently related to this particular action to prevent Zukowski's recovery.
 
 
 21
 For the reasons recited above, we affirm the action of the district court.
 
 
 22
 AFFIRMED.
 
 
 
 *
 Honorable James H. Michael, Jr., Western District of Virginia, sitting by designation
 
 
 [1]
 Judging from the activities of the parties, the corporation was virtually a shell. Stock was never issued, required meetings were never held, minutes were not kept, and the directors did not even know who was and who wasn't a fellow director. As loose as the corporate structure was, however, Dwight Dunton declared himself the 100% stockholder and owner on the corporate federal income tax return
 
 
 [2]
 Also during this period, a $240,000 deficiency appeared in the Rink, Inc. accounts for which Dwight Dunton was largely responsible, according to the findings of the district court
 
 
 [3]
 An action brought in Virginia must be litigated under the procedural rules of Virginia, including Virginia choice of law principles. Klaxon v. Stentor Electric Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). While Virginia considers the statute of frauds procedural only, Maryland courts have not, to our knowledge, ruled on this issue. See 47 A.L.R.3d 137. Cf. Md. Real Prop. Code Ann. § 5-103 with § 5-104. Because the land is located in and performance of the contract was to be in Maryland, we prefer to apply the Maryland doctrine of part performance. Equitable Trust Co. v. Bratwursthaus Management Corporation, 514 F.2d 565 (4th Cir. 1975)