**Louise Price PARSONS, Plaintiff,**

v.

**JEFFERSON–PILOT CORPORATION, Thomas M. Belk, William E. Blackwell, Edwin B. Borden, William H. Cunningham, Jerry L. Eagle, Thomas Fee, C. Randolph Ferguson, Robert G. Greer, Charles E. Hayworth, A. Linwood Holton, Jr., John C. Ingram, John K. Jones, Robert H. Koonts, Curtis R. Lashley, Levi P. Maupin, Jr., E.S. Melvin, Charles W. McCoy, Albert G. Myers, Jr., Donald S. Russell, Jr., W. Roger Soles, Callie C. Spiller, Jr., Robert H. Spilman, Louis C. Stephens, Jr., John T. Still, III, Martha A. Walls, and John T. Warmath, Jr., Defendants.**

No. 2:91CV00372.

United States District Court,
M.D. North Carolina,
Greensboro Division.

Feb. 14, 1992.

James W. Miles, Jr., William Albert Eagles, Stern, Graham & Klepfer, Greensboro, N.C., Donald H. Parsons, Joseph L. Hardig, Bloomfield Hills, Mich., Richard M. Kirby, Michael J. McConnell, Atlanta, Ga., for plaintiff Louise Price Parsons and respondents Donald H. Parsons, J. Craighill Redwine, and Resources Planning Corp.

Larry B. Sitton, Smith, Helms, Mullis & Moore, Greensboro, N.C., for defendants Jefferson–Pilot Corp., et al.

## DISCOVERY ORDER

SHARP, United States Magistrate Judge.

This matter comes before the Court on the "Consolidated Motion to Compel Production of Documents" filed by Jefferson–Pilot on January 6, 1992. Parsons and several non-parties ("respondents") filed a brief in opposition on January 13, and a supplemental brief on January 17. Jefferson–Pilot filed a reply on January 28.[1] The motion is ready for a ruling.

Jefferson–Pilot's motion is styled "consolidated" because it places in issue both Rule 34 document requests directed to plaintiff Parsons and also Rule 45 document subpoenas directed to several non-parties.[2] The discovery requests, although directed to different persons, are nearly identical in substance and therefore may be dealt with in a single order.

### The Nature of this Action

In this action, Parsons alleges a violation by defendants of SEC Rule 14a–9 in connection with Jefferson–Pilot's 1990 and 1991 proxy statements to shareholders. Parsons alleges that false statements and omissions in the 1990 proxy materials concealed the true nature of, and misled shareholders into approving, an amendment (the "Amendment") to the company's 1989 stock option plan, which Amendment allowed for grants of unrestricted stock to certain members of management and the board of directors. Parsons says that the proxy materials described only *restricted* stock, not unrestricted stock. As to the 1991 proxy materials, Parsons alleges that further misstatements were made about the "restricted stock" distributed under the Amendment. For relief, Parsons seeks an order of this Court (1) declaring the proxies cast in favor of the Amendment to be null and void and rescinding all awards and grants made under the Amendment; (2) declaring all proxies received in connection with the 1990 and 1991 election of directors to be null and void and the elections to be invalid; (3) granting preliminary and permanent injunctive relief prohibiting further grants of stock under the Amendment; and (4) granting preliminary and injunctive relief against persons who have received any grants of stock under the Amendment.

In answer to the complaint, Jefferson–Pilot alleges that this lawsuit is "just one tactic in the plaintiff's coordinated assault on the management of Jefferson–Pilot, filed not for the purposes of seeking proper legal redress, but rather for the improper purpose of aiding plaintiff and her associates toward their goal of taking control of Jefferson–Pilot for their own purposes and monetary gain." (Answer, ¶ 1.) Jefferson–Pilot states that it "incorrectly used the word 'restricted' in describing some of

---

1. The Court grants leave for Jefferson–Pilot to file a reply in excess of 10 pages in view of the number and complexity of the issues herein. *See* Local Rule 203(g).

2. The Rule 45 subpoenas were served upon Resources Planning Corporation, Donald H. Parsons, and J. Craighill Redwine.

the aspects of the stock grants in the 1990 proxy statement." (Answer, ¶ 12.) Nonetheless, it maintains that the description of the Amendment to the stock plan in the 1990 proxy statement, read as a whole, made it clear that the Compensation Committee was given complete discretion to grant stock to key employees and to set whatever restrictions it chose. (*Id.*) With respect to the 1991 proxy statement, Jefferson–Pilot states that in describing the Amendment to the stock plan, the wording of the 1990 proxy statement was tracked, including inadvertent use of the word "restricted." (Answer, ¶ 26.) As its second defense, Jefferson–Pilot contends that the use of the word "restricted" in the 1990 and 1991 proxy statements was not material as a matter of law. As a sixth defense, Jefferson–Pilot alleges that plaintiff and her associates have engaged in a public relations campaign to create adverse public opinion with respect to Jefferson–Pilot, which plaintiff and her associates hope will assist them in a proxy contest for control of the company. Jefferson–Pilot claims that plaintiff's request for equitable relief should be barred by the doctrine of unclean hands.

### The Discovery Requested by Jefferson–Pilot

Jefferson–Pilot describes the documents it seeks to obtain from respondents as containing "basic information." The documents are said to "deal generally with the activities of plaintiff and the witnesses as they relate to Jefferson–Pilot." The company notes that the "requests by necessity have been stated broadly, because only plaintiff and her associates know of the existence, location, type and content of responsive documents." (Jefferson–Pilot's Brief, pp. 4–6.)

In argument in support of the scope of the document requests, Jefferson–Pilot emphasizes that Parsons prays for far-reaching, dramatic equitable relief in this action. Jefferson–Pilot has pleaded defenses of un-

clean hands and laches, defenses that it says place in issue the "motives, intent, and good faith" of the plaintiff and her associates in bringing and pursuing this lawsuit. (Brief, p. 6.) To obtain discovery concerning this motive, according to Jefferson–Pilot, "it is necessary to discover exactly what [Parsons] and her associates have been doing and planning since December 1990, when they publicly began their campaign to oust current management and take control of Jefferson–Pilot."[3] (Brief, p. 6.)

Respondents contend that the document requests served upon them are improper and far beyond the scope of discovery permitted by Rule 26, Fed.R.Civ.P. First, they contend that the requests fail to describe the documents sought with "reasonable particularity," making an adequate response impossible. Second, they assert that information regarding "motives, intent, and good faith in bringing the present lawsuit" is irrelevant and that Jefferson–Pilot's equitable defenses do not create a basis for the extensive requests made in this case. Third, respondents object to a number of requests on grounds of privilege.

The Court need not attempt to summarize the scope of Jefferson–Pilot's document requests; Jefferson–Pilot has done that in argument. According to the company, the requested documents are needed to "discover exactly what [Parsons] and her associates have been doing and planning [in relation to Jefferson–Pilot]." (Brief, p. 6.) Working within this framework for discovery, Jefferson–Pilot has asked, for example, for Parsons' (1) agreements with Resources Planning Corporation or the Jefferson–Pilot Shareholders Committee relating to Jefferson–Pilot [Request 2]; (2) documents relating to any person you considered or suggested as a nominee for the Board of Directors of Jefferson–Pilot [Request 5]; (3) documents relating to any contact between you and J. Craighill Redwine relating to Jefferson–Pilot [Request 8]; (4) documents relating to any contact

---

**3.** This statement seems much broader than Jefferson–Pilot's document requests. The requests call for documents "covering the time period from January 1, 1989 to July 25, 1991" (the date this action was filed).

between you and the Jefferson–Pilot Shareholders Committee or any member thereof relating to Jefferson–Pilot [Request 9]; (5) documents relating to efforts by you to gain control, increase shareholder values, or place representatives on the Board of Directors of Jefferson–Pilot [Request 17]; and (6) documents relating to any contacts by you with any public relations firm or media consultant relating to Jefferson–Pilot [Request 18]. Jefferson–Pilot has made nearly identical document requests in subpoenas served upon Resources Planning Corporation, J. Craighill Redwine, and Donald H. Parsons.

### Discussion

Respondents object to the discovery requests on grounds of (1) vagueness, (2) relevance, and (3) privilege. The Court will address these objections in turn.

### 1. The Asserted "Vagueness" of the Document Requests.

Document requests in discovery must set forth the items to be inspected by individual item or category. Each item or category must be described with "reasonable particularity." (Rule 34[b].) Courts have interpreted the "particularity" requirement to mandate that a responding party be given sufficient information to enable it to identify responsive documents. *See Mallinckrodt Chem. Works v. Goldman, Sachs & Co.*, 58 F.R.D. 348 (S.D.N.Y.1973). Broad and undirected requests for all documents which relate in any way to the complaint are regularly stricken as too ambiguous. *See, e.g., Robbins v. Camden City Bd. of Educ.*, 105 F.R.D. 49, 60 (D.N.J.1985); *Gaison v. Scott*, 59 F.R.D. 347, 353 (D.Haw.1973).

The Court's review of Jefferson–Pilot's document requests demonstrates that none of the requests fail the "reasonable particularity" test. All requests place the respondents on reasonable notice of what is

called for and what is not. None are so open-ended as to call simply for documents related to a claim or defense in this action. Moreover, it is apparent from respondents' supplemental brief that they have been successful in identifying over 300 documents that are responsive to the requests, and this identification supports the Court's finding that the categories set out in the requests are sufficiently specific. Respondents' objections regarding "vagueness" are OVERRULED.

### 2. The Relevance of the Requested Discovery.

Under the Federal Rules of Civil Procedure, the scope of pretrial discovery extends to information "reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1), 33(b), 34(a). The Court of Appeals for the Fourth Circuit has interpreted the language of the discovery rules liberally. Information sought in discovery must be "germane" to the subject matter of the action. *See Ralston Purina v. McFarland*, 550 F.2d 967 (4th Cir.1977); *see generally* Wright & Miller, *Federal Practice and Procedure: Civil*, § 2007. Although the scope of discovery is broad, it is not unlimited, and the basic touchstone is always relevance to the subject matter.

The "subject matter" of the litigation is defined by the pleadings of the parties. In the case at bar, Jefferson–Pilot has pleaded the alleged "unclean hands" and laches of plaintiff Parsons. Nearly all of the discovery requests in issue are said by Jefferson–Pilot to be relevant to these equitable defenses. This being so, the Court must consider the nature of the equitable defenses in order to determine what discovery is germane to them.[4]

In an action wherein a plaintiff seeks equitable relief, the equitable maxim applies "that he who comes into equity

---

4. In the analysis of the clean hands defense set out in this opinion, the Court is not determining the legal sufficiency of Jefferson–Pilot's Sixth Defense as interposed in this action. There is no motion before the Court to strike or to dismiss the Sixth Defense. In describing the scope

of relevant discovery information, however, the Court must begin with a recognition of the potential scope of the defense maintained by Jefferson–Pilot and said by the company to be the basis for its discovery requests.

must come with clean hands." *Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381 (1945). In the words of the Supreme Court in *Precision Instrument,*

> This maxim is far more than a mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant. That doctrine is rooted in the historical concept of court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith. This presupposes a refusal on its part to be "the abettor of iniquity." Thus while "equity does not demand that its suitors shall have led blameless lives" as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue.

324 U.S. at 814–15, 65 S.Ct. at 997 (citations omitted). In *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 54 S.Ct. 146, 78 L.Ed. 293 (1933), the Court expounded at length on the nature of the clean hands doctrine:

> The meaning and proper application of the maxim are to be considered. As authoritatively expounded, the words and the reasons upon which it rests extend to the party seeking relief in equity. "It is one of the fundamental principles upon which equity jurisprudence is founded, that before a complainant can have a standing in court he must first show that not only has he a good and meritorious cause of action, but he must come into court with clean hands. He must be frank and fair with the court, nothing about the case under consideration should be guarded, but everything that tends to a full and fair determination of the matters in controversy should be placed before the court." The governing principle is "that whenever a party who, as *actor*, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior con-

duct, the doors of the court will be shut against him *in limine;* the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy." This Court has declared: "It is a principle in chancery, that he who asks relief must have acted in good faith. The equitable powers of this court can never be exerted in behalf of one who has acted fraudulently or who by deceit or any unfair means has gained an advantage. To aid a party in such a case would make this court the abettor of iniquity." And again: "A court of equity acts only when and as conscience commands, and if the conduct of the plaintiff be offensive to the dictates of natural justice, then, whatever may be the rights he possesses and whatever use he may make of them in a court of law, he will be held remediless in a court of equity."

> But courts of equity do not make the quality of suitors the test. They apply the maxim requiring clean hands only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect to the matter in litigation. They do not close doors because of plaintiff's misconduct, whatever its character, that has no relation to anything involved in the suit, but only for such violations of conscience as in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication. They apply the maxim, not by way of punishment for extraneous transgressions, but upon considerations that make the advancement of right and justice. They are not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion.

290 U.S. at 244–46, 54 S.Ct. at 147–48 (citations omitted).

■ The courts have given shape to the clean hands doctrine, defining what sort of action on the part of a party seeking equity may be held to bar equitable relief. Criminal conduct, or even conduct sufficient to sustain other legal proceedings, is not re-

quired. Instead, conduct that the court finds to be unconscionable, in bad faith, or in transgression of equitable standards may suffice to support the defense. *See generally* Wright & Miller, *Federal Practice and Procedure: Civil,* § 2946.

■ The inequitable conduct of the party seeking equity must have an immediate and necessary relation to the matter in litigation. In *Zukowski v. Dunton,* 650 F.2d 30 (4th Cir.1981), the Court of Appeals reviewed equitable relief granted to Zukowski in the form of specific performance of oral agreements to transfer stock and real property. Before the appellate court, the appellant argued that the equitable doctrine of clean hands should preclude specific performance because Paul Zukowski had defrauded defendant Dwight Dunton on some other business matters. The Court of Appeals held:

> However, to bar recovery under the clean hands doctrine, the plaintiff's wrongful action against defendant must result from the same transaction. Here the cause of action in question concerns Rink, Inc. and the business of operating a roller rink. Any business deals between the two parties involving other ventures are not sufficiently related to this particular action to prevent Zukowski's recovery.

650 F.2d at 35 (citations omitted).

The ruling in *Zukowski* is in line with other authority. In *Keystone Driller,* the Supreme Court required that "some unconscionable act of one coming for relief [have] immediate and necessary relation to the equity that he seeks in respect of the matter in litigation." 290 U.S. at 245, 54 S.Ct. at 147. In *Pierce v. Apple Valley, Inc.,* 597 F.Supp. 1480, 1485 (S.D.Ohio 1984), the district court described the rule in this fashion:

> As the doctrine is applied in ordinary litigation, unclean hands on the part of a plaintiff will bar equitable relief only if the plaintiff has engaged in bad faith or unconscionable conduct that relates to the subject matter of the action and is directed at the defendant. The conduct alleged to bar the action must relate to

the "controversy in issue," and must have an "immediate and necessary relation" to the equity that is asserted in the lawsuit. It is not sufficient that the complaint is actuated by motives of which a court may not approve.

597 F.Supp. at 1485 (citations omitted). *Accord, Ciba–Geigy Corp. v. Bolar Pharmaceutical Co.,* 747 F.2d 844, 855 (3rd Cir.1984) (unclean hands defense requires a showing that the plaintiff's conduct is inequitable and involves the subject matter of the plantiff's claim), *cert. denied,* 471 U.S. 1137, 105 S.Ct. 2678, 86 L.Ed.2d 696 (1985); *Mitchell Bros. Film Group v. Cinema Adult Theater,* 604 F.2d 852, 863 (5th Cir. 1979), *cert. denied,* 445 U.S. 917, 100 S.Ct. 1277, 63 L.Ed.2d 601 (1980); *Curley v. Brignoli Curley and Robert Assocs.,* 746 F.Supp. 1208, 1219 (S.D.N.Y.1989) (unclean hands defense bars plaintiff's relief only when plaintiff's improper conduct is part of the source of his equitable claims; unrelated bad conduct is irrelevant).

■ It is well-established that in ordinary litigation, not involving the clean hands defense, the plaintiff's motive in bringing suit is not relevant to the subject matter of the litigation and is not a matter for discovery. For example, in *Digital Equip. Corp. v. System Indus. Inc.,* 108 F.R.D. 742, 743 (D.Mass.1986), the district court denied discovery concerning the plaintiff's motive in bringing suit, despite the fact that defendant had alleged that suit was brought by Digital with full knowledge that the patents in question should never have been issued. The court reasoned that:

> As stated by the Court in *Foremost Promotions, Inc. v. Pabst Brewing Co.,* 15 F.R.D. 128, 130 (N.D.Ill.1953):
>
> It is difficult to see how an inquiry into the circumstances surrounding the instigation of the action could affect the substance of the claim. The responses might lead to embarrassing admissions of champerty or unconscionable arrangements as to fees and expenses, but these excesses are not in any way relevant to the trial of the particular issue.

The reasoning applied in *Foremost, supra*, has been consistently followed in situations where discovery was sought concerning the initiation of a lawsuit. In all of the following cases cited, the motive behind the institution of the action was deemed not relevant to the subject matter involved pursuant to Fed.R.Civ.P. 26(b). *See Amherst Leasing Corporation v. Emhart Corporation*, 65 F.R.D. 121, 126 (D.Conn.1974) where the *Foremost* reasoning was specifically relied upon when the defendant sought discovery of the events regarding the commencement of the lawsuit; *Sandler v. McGraw-Edison Company*, 92 F.R.D. 463 (S.D.Ohio 1981) where the court denied the motion to compel production of documents concerning the investigative committee and the various plaintiffs which may have addressed the issue of the purpose of the lawsuit; and *Cresswell v. Prudential-Bache Securities, Inc.*, 105 F.R.D. 64 (S.D.N.Y.1985) held that the defendant was not entitled to depose the plaintiffs with respect to conversations among the plaintiffs regarding the decision to initiate the lawsuit.

In light of the unambiguous and persuasive majority trend, the Court adopts the rationale of *Foremost* and the subsequent decisions predicated therefore, and allows plaintiff's motion for a protective order.

108 F.R.D. at 743–44 (footnotes omitted).

■ Thus as a general rule, a plaintiff's motive for filing suit is not discoverable. The mere fact that a defendant has pleaded a defense of unclean hands does not automatically change this rule. In *Pierce*, for example, the district court specifically found that the motive of the plaintiff in filing the action was irrelevant to the issue of unclean hands, even though, as the court said, the complaint may be "actuated by motives of which a court may not approve." 597 F.Supp. at 1485. Ultimately, the question of whether a plaintiff's motive for litigating is discoverable, when clean hands

is made a defense, is determined by the customary test for that defense: Does the motive of the plaintiff have an immediate and necessary relation to the transaction placed in issue by the plaintiff's request for equitable relief?

■ Jefferson–Pilot also maintains an equitable defense of laches. It asserts that, "plaintiff had knowledge of her alleged 'rights' [a cause of action arising out of the 1990 proxy statement of the company] in advance of the 1991 shareholders meeting, but deliberately waited to file this action until after the selection of Jefferson–Pilot's Class II directors [in 1991] in order to serve her real purpose: putting the entire board up for election in 1992." (Reply Brief, pp. 9–10.) The company says that plaintiff delayed taking action because she seeks to use this litigation to avoid the company by-laws for staggered election of directors. Her request for equitable relief herein—setting aside the board elections of 1990 and 1991—would have the effect of placing the entire board up for election in 1992, giving her an opportunity to take immediate control if she is successful in a proxy contest.[5]

Recognizing the reach of the clean hands and laches defenses, as set out above, the Court must determine if Jefferson–Pilot's requested discovery is relevant to those defenses. The question, as the Court has posed it, is: Does the motive of the plaintiff for litigating have an immediate and necessary relation to the transaction in issue in this litigation? Respondents say "no," that the transaction in issue is Jefferson–Pilot's issuance of misleading proxy statements in 1990 and 1991, and plaintiff's motivations for filing this action are, as the general rule provides, irrelevant. Jefferson–Pilot says "yes," because the transaction in issue includes plaintiff's claim for equitable relief in the form of removing from the board two-thirds of the directors of Jefferson–Pilot, a request that calls into

---

**5.** Jefferson–Pilot's motion papers advise that Parsons appears to intend a proxy contest in 1992. So far as the Court is aware, no formal contest is yet underway. Nonetheless, respon-dents' assertion of the business strategy privilege is based upon a statement that they are contemplating a contest for corporate control.

question plaintiff's motives and her diligence in bringing suit.

The Court sits in equity in this case. The relief that the plaintiff seeks in equity is as much a part of the case as is the issue of liability. In *Mills v. Electric Auto–Light Co.,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), the Supreme Court noted that violation of the proxy rules under § 14(a) of the Securities and Exchange Act of 1934 would not automatically lead to any particular one of several possible equitable remedies. The Court wrote:

> In selecting a remedy the lower courts should exercise the sound discretion which guides the determinations of courts of equity, keeping in mind the role of equity as the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims.

396 U.S. at 386, 90 S.Ct. at 622 (citations and internal quotations omitted). The Supreme Court did not believe that full rescission of the challenged corporate action (merger, in that case) was necessarily the required or appropriate remedy. Rescission would be the proper action, "only if a court of equity concludes, *from all the circumstances,* that it would be equitable to do so." *Id.* at 388, 90 S.Ct. at 623 (emphasis added).

Discoverable information encompasses information that "appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b). Where, as here, the plaintiff seeks an equitable remedy that puts control of the defendant corporation substantially in play, the plaintiff's motive in doing so certainly is a "circumstance" that a court of equity may consider in its discretion. The equitable defenses in this case are based upon assertions that plaintiff has acted in a manipulative manner to further her own interests in contesting for control of Jefferson–Pilot. At this stage, of course, the Court has no basis for evaluating Jefferson–Pilot's assertions. They may well be entirely false. Nonetheless, the Court can decide this issue at trial only on the basis of a record wherein reasonable discovery has been permitted. Jefferson–Pilot's disputed discovery is relevant to the subject matter of the litigation and may not be stricken. Respondents' objections on grounds of relevance are OVERRULED.

It is noteworthy that if the plaintiff sought only a remedy of rescission of the stock grants made under the Amendment approved at the 1990 and 1991 annual meetings of Jefferson–Pilot (Claims for relief One, Three, and Four), the conclusion reached above would likely not obtain. Plaintiff's alleged motives in this litigation would seem to bear no relation to such a requested remedy. Further, the Court notes that there is, of course, nothing wrong (as Jefferson–Pilot occasionally seems to assume) with attempting a hostile take-over of a corporation by means of a proxy contest, if that is in fact what plaintiff intends. The proxy laws and regulations exist to provide a means for such a contest. The Court certainly draws no suggestion of misconduct or wrongdoing from the mere fact that such an action may be within the contemplation of the plaintiff or other respondents. Nonetheless, plaintiff's motives in this regard are relevant to the "equity" of granting plaintiff's second claim for relief should the Court find defendant liable under plaintiff's cause of action. Information regarding strategic delay by the plaintiff would be relevant to defenses of unclean hands and laches and could affect the equitable remedy the Court may ultimately choose if plaintiff establishes liability.

Although the Court finds Jefferson–Pilot's document request to be relevant to the subject matter, and therefore proper discovery, there remain issues of privilege and protection from discovery. The Court, in the remaining sections of this order, will address those issues.

3. Privilege and Protection From Discovery.

Respondents have identified nearly 350 documents they are withholding under claims of privilege or protection. (*See* Exhibit 1–A to Respondents' Supplemental Brief.) It appears, from the wording of the

affidavits of J. Craighill Redwine, Donald H. Parsons, and James L. Hayes that respondents may also hold responsive documents on which no claim of privilege is made. (*See* ¶ 5 or 6 of each affidavit, "*among* the documents....") Any such documents shall be produced by respondents by February 21, 1992.

Respondents assert three immunities from discovery: the attorney-client privilege, work-product protection, and the "business strategy privilege." They describe 348 documents which they say are exempt from discovery by reason of one or more of these privileges. (*See* Exhibit 1–A and 2, Respondents' Supplemental Brief.) Respondents provide information regarding the documents, including date, author, addresses, persons copied to, and subject matter. Jefferson–Pilot contests these claims of privilege and asks the Court to conduct an *in camera* review of some of the documents.

### A. *Respondents' Assertion of the Attorney–Client Privilege.*

■ The attorney-client privilege prohibits the disclosure of a communication if: (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. *United States v. United Shoe Mach. Corp.*, 89 F.Supp. 357, 358–59 (D.Mass. 1950).

In Exhibit 1–A to respondents' supplemental brief, documents said to be covered by the attorney-client privilege are marked "AC." Review of the exhibit satisfies the Court that a number of these documents are covered by the privilege. As to others,

however, questions arise that cannot be answered on the present record.

For example, the "AC" documents include a number of documents that were apparently copied to third parties (persons other than the plaintiff, attorneys, or other respondents). These include documents 11, 13, 15, 18, 19, 25, 28, 29, 41, 43, 44, 51, 57, 58, 116, 122, 125, 126, 128, 130, 131, 132, 142, 149, 157, 158, 175, 177, 212, 215, 237, 239, 240, 290, 291, 300, 302, 329, 331, 336, 344, and 345. Respondents assert that some of the third parties were "agents" of the proponent of the privilege, and therefore their presence does not breach the confidentiality essential to the privilege. Other third persons are said to have a "common interest" in seeking legal advice.

■ Ordinarily, the sharing of a communication with a third party destroys the privilege. *Liggett Group, Inc. v. Brown & Williamson Tobacco Corp.*, 116 F.R.D. 205, 210 (M.D.N.C.1986). The privilege is preserved if the third party is an agent of the proponent, but a mere "working relationship" does not show agency. *Id.* at 210–11. Agents are only those persons "essential to the lawyer's performance of legal services." *Burlington Industries v. Exxon Corporation*, 65 F.R.D. 26, 40 (D.Md.1974). Communications shared with persons having a common interest in seeking legal advice also remain within the privilege. *See SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508, 513–14 (D.Conn.1976). The Court will conduct an *in camera* review of the documents listed above in order to determine the application of privilege.

Jefferson–Pilot argues that a second category of "AC" documents also requires *in camera* review. (Reply Brief, pp. 18–19.) These are documents that were, according to Jefferson–Pilot, "not communicated or ... communicated to unidentified third parties." The Court has carefully reviewed the descriptions of this these documents, prepared by counsel for respondents, and finds that most are unquestionably covered by the privilege. The documents are described as containing attorney-client communications. The subjects identified are clearly within the realm of legal advice, not

business advice. *See generally Weil Ceramics and Glass v. Work*, 110 F.R.D. 500, 503–04 (E.D.N.Y.1986) (documents that contain technical or business data are not primarily legal in nature and are not privileged). Of this second category of documents, the Court will conduct an *in camera* review only of documents 41, 43, 108, 174, 211, 229, 245, 246, 267, 271, 272, 273, 303, and 304.[6] Documents designated "AC" in Exhibit 1–A, other than those identified above for *in camera* review, are found to be covered by the attorney-client privilege.[7] A number of these are said by respondents to be covered by other privileges (work-product protection or the business strategy privilege), but the Court need not address other assertions of privilege, having found them protected from discovery by the attorney-client privilege.

### B. *Respondents' Assertion of Work–Product Protection.*

Respondents claim work-product protection as to some documents. The documents remaining in issue under this claim are numbers 15, 16, 18, 19, 25, 28, 29, 41, 43, 44, 45, 49, 51, 57, 58, 59, 77, 78, 102, 103, 104, 128, 130, 131, 136, 138, 153, 158, 175, 201, 235, 236, 245, 267, and 331.[8] Many, but not all, of these are already to be submitted to the Court for review of attorney-client privilege claims. The Court will review all of these documents under principles of work-product protection, and they are to be submitted to the Court for *in camera* review. The Court finds the document described in Exhibit 2 to plaintiff's supplemental brief to be protected from discovery by the work product doctrine.

### C. *Respondents' Assertion of the Business Strategy Privilege.*

 Respondents assert a "business strategy privilege" as to a number of doc-uments called for in Jefferson–Pilot's requests. According to respondents, "the 'business strategy' doctrine protects from disclosure the strategic business plans, proposals or alternatives under consideration by one contemplating engaging in, or defending against, a contest for corporate control." (Plaintiff's Supplemental Brief, p. 9.) Respondents state that disclosure of these documents would irreparably harm and prejudice the plaintiff by providing Jefferson–Pilot with strategic planning documents concerning "any contemplated proxy contest."

The Court observes that a number of state and federal courts have, in recent years, recognized a limited business strategy privilege. In *Grand Metropolitan PLC v. Pillsbury Co.*, Fed.Sec.L.Rep. (CCH) (1988–89) 94,096, 1988 WL 130637 (Del.Ch. November 21, 1988), the plaintiff Grand Metropolitan sought to discover planning documents from defendant Pillsbury relating to Grand Metropolitan's outstanding tender offer to the shareholders of Pillsbury. The Chancellor for the Court of Chancery of Delaware described the nature of the business strategy privilege as follows:

The general principles governing this motion may be stated without great difficulty. The application of those standards, however, is necessarily highly particularized and often difficult.

The starting place is a recognition that the scope of permissible discovery under Rule 26(b) of the Rules of the Court of Chancery (which is modeled on the federal rules of civil procedure) is broad. There is no assertion here that the materials sought fail to satisfy the test of Rule 26(b). However, this court and others have recognized that in a contest for corporate control, the board of directors

---

**6.** There is some overlap with the first category of attorney-client documents for *in camera* review.

**7.** Documents found to be subject to the attorney-client privilege are numbers 5–7, 16, 23, 24, 27, 30–32, 36, 38, 46, 52, 60, 62, 64–67, 69–76, 79–82, 84–100, 105–107, 109–115, 117–121, 124, 127, 129, 139, 141, 143, 154, 156, 163–170, 173, 176, 178–194, 196–200, 202–210, 213, 214, 216–228, 230–233, 238, 241–244, 247–266, 268–270, 274–289, 292–296, 298, 299, 301, 305–309, 312–328, 330, 332–335, 337–343, 346, and 347.

**8.** Many other assertions of work-product protection need not be reached because the Court has found the documents in question to be protected under the attorney-client privilege.

of a target company continues to have an ongoing responsibility to manage the corporation and, in the face of such a contest, that responsibility may entail the exploration of alternative transactions that would better promote corporate and shareholder welfare. The discovery process may legitimately give some consideration to such efforts. We have repeatedly recognized that disclosure of such efforts, while they are ongoing, may be detrimental to shareholder interests. Thus, under authority of Rule 26(c), we have, when a threat of that kind is present, engaged in an analysis that attempts to evaluate the importance of the matter sought to be discovered to the party seeking it; the risk of nonlitigation injury that might occur to the target corporation if discovery is permitted; and the stage of the company's efforts, as well as the stage of the litigation. The effort is to fashion a discovery ruling that best balances and accommodates inconsistent yet valid contending interests.

Since the "business strategy privilege" or "white knight privilege" is not technically a privilege in the sense that proof of certain elements creates something akin to an entitlement, but is in the nature of a qualified immunity to discovery similar to the attorney's work product doctrine (see *Computervision Corp. v. Prime Computer, Inc.*, Del.Ch., C.A. No. 9513, Allen C. (January 26, 1988); *BNS, Inc. v. Koppers Co., Inc.*, 683 F.Supp. 454 (D.Del.1988)), its invocation in all instances calls forth this balancing of interests approach. The cases engaging in this analysis, however, have developed a few helpful principles. Primary among these is the notion that, once a decision has been made, the shareholders "are entitled to test the validity of that decision and, for that purpose, to inquire into its underlying basis." *Plaza Securities Company v. Office*, Del.Ch., C.A. No. 8737, Jacobs, V.C., 1986 WL 14417 (December 15, 1986). In *BNS, Inc. v. Koppers*, Chief Judge Schwartz, applying federal, not Delaware, law, noted a similar view:

> BNS will not be denied the documents forever. This fact has been a significant factor in the Court's efforts to accommodate the needs of the parties. As discussed above, BNS has a genuine need for the documents it seeks. It is equally clear at some future point BNS may be immediately entitled to that which has been refused it today. That point will be reached with respect to the $60 offer if and when, the Koppers board formally rejects it. Similarly, if the Koppers board should formally announce its intent to adopt any one or a combination of defenses, BNS will become immediately entitled to all documents relating to all defensive strategies it had considered.
>
> 683 F.Supp. at 458.

Fed.Sec.L.Rep. (CCH) at 94,098–94,102 (footnotes omitted). *See also Temple Holdings Ltd. v. SEA Containers Ltd.*, 131 F.R.D. 360 (D.D.C.1989); *Gioia v. Texas Air Corp.*, No. 9500, 1988 Del.Ch.Lexis 30, 109 Lab.Cas. 55891, 1988 WL 18224 (Del.Ch. March 3, 1988). In *Dedde v. Orrox*, No. 6409, 1981 WL 15121 (Del.Ch. April 8, 1991) (Lexis, State's Library, Del. Ch. File), a similar "privilege" was extended to a plaintiff shareholder with respect to documents relating to "any proposed proxy fight."

Although the business strategy privilege is of only recent vintage, and has been applied in but a few cases, the Court believes that it represents a sound application of Rules 26(b)(1) and (c). There exist, in some circumstances such as those now before the Court, inconsistent yet valid interests to be balanced: on the one hand, the requesting party's need for information in order to fairly prepare for trial; and, on the other, the responding party's need to be able to carry out an ongoing strategy in the context of a corporate takeover or proxy contest. The Court finds the business strategy doctrine to have application in this case, and will apply it in a fashion appropriate to the particular circumstances before the Court. *See generally Grand Metropolitan PLC v. Pillsbury* (the appli-

cation of the privilege is necessarily "highly particularized" to the facts before the court).

 The Court will protect from discovery, *at this time*, any documents which reveal an ongoing strategy of the respondents with respect to a contest for control of Jefferson–Pilot. The limitation thus stated by the Court—*at this time*—is critical. As stated by the Court of Chancery in *BNS v. Koppers*, the party seeking discovery "will not be denied the documents forever." 683 F.Supp. at 458. The Court will not defeat respondents' opportunity to carry out a strategy for contesting for control of Jefferson–Pilot in the immediate future by now ordering release of sensitive planning documents. At the same time, Jefferson–Pilot will not be required to contend against (on summary judgment, at trial, or in a bifurcated hearing on remedies) the potential imposition of an equitable remedy affecting control of the company until such time as it may have discovery of documents relevant to its equitable defenses.

At this juncture, it is impossible for the Court to determine for what period of time responsive documents should be protected under the business strategy privilege. The documents themselves may well answer this question, and the Court will review the documents *in camera*. Since only documents coming into being before July 25, 1991 (the date the complaint in this action was filed) are called for by Jefferson–Pilot, it may prove to be that no responsive documents reflect strategic plans still ongoing in 1992. Or, it may prove to be that any strategic plans have an obvious "expiration date," such as the 1992 annual meeting of Jefferson–Pilot. *Cf. BNS v. Koppers* (business strategy privilege held to expire as soon as the Koppers board formally acted on the tender offer).

Respondents shall submit for an *in camera* review all documents withheld under claim of the business strategy privilege, except for those which have already been found to be exempt from discovery by reason of the attorney-client privilege. These include, as it appears from respondents'

Exhibit 1–A, documents numbers 1–4, 8–10, 15, 17–22, 25–29, 33–35, 37, 39–45, 47–51, 53–59, 61, 63, 68, 77, 78, 83, 101–104, 108, 116, 123, 125, 126, 128, 130–138, 140, 144–153, 155, 157, 159–162, 171, 172, 174, 175, 177, 195, 211, 212, 215, 229, 234, 245, 246, 267, 271–273, 297, 303, 304, 310, 311, 344, and 345. In submitting these documents, respondents may make such factual assertions and argument as they wish, under seal, to establish the time period for protection of the documents.

### Conclusion

Jefferson–Pilot's motion to compel discovery from the respondents is GRANTED in part and DENIED in part, as set out above. Respondents shall submit *in camera* documents by February 25, 1992, accompanied by such information, under seal, as they believe establishes the predicate facts for privilege or protection. Any documents responsive to Jefferson–Pilot's requests, on which no claim of privilege or protection is made, shall be produced to Jefferson–Pilot by February 21.