**Patricia CREE, Appellant,**

v.

**Kim Allen HATCHER, M.D., Appellee.**

**No. 91-3514.**

United States Court of Appeals, Third Circuit.

Argued March 6, 1992.

Decided July 10, 1992.

Maureen Dunn Harvey (argued), Marilyn J. Larrimer, Wallace, Chapas & Jamiolkowski, Pittsburgh, Pa., for appellant.

Louis C. Long (argued), Donald W. Bebenek, Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, Pa., for appellee.

Before STAPLETON and MANSMANN, Circuit Judges, and POLLAK, District Judge *.

OPINION OF THE COURT

LOUIS H. POLLAK, District Judge.

This diversity medical malpractice case arose in the Western District of Pennsylvania. The case comes before us on appeal of a defense verdict and the district court's subsequent denial of plaintiff's motion for a new trial. Because we conclude that the district court permitted one of plaintiff's expert witnesses to be impeached on the

* Honorable Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

basis of inadmissible evidence, we will reverse and remand for a new trial.

## I.

Plaintiff Patricia Cree, appellant before this court, first obtained the professional services of defendant Kim Allen Hatcher, M.D., in February 1982. On February 3, 1986, defendant performed a gynecological examination of plaintiff. At the time of the examination, plaintiff complained of discomfort, dryness, and bleeding after sexual intercourse. As part of the examination, defendant performed a Pap test, a procedure in which cells are sampled from the cervix for the purpose of laboratory examination. On February 12, 1986, plaintiff was informed that laboratory analysis had revealed her Pap smear to be Class II, indicating benign atypia. Defendant did not tell plaintiff the implications of the Class II result, but did request that plaintiff return in six months for an additional test.

In the months following the February 1986 examination, plaintiff moved; as a result, she did not return to defendant for a subsequent examination. In December 1986, however, she was examined by another physician; at that time, her Pap smear was found to be Class IV, a classification which strongly suggests the presence of cancer. Plaintiff was then referred to a specialist, who, on January 22, 1987, diagnosed plaintiff as suffering from squamous cell carcinoma of the cervix. Six days later, plaintiff underwent a radical hysterectomy, appendectomy, and pelvic lymphadenectomy.

Plaintiff initiated the present action on December 1, 1988, claiming that defendant had negligently failed to diagnose and monitor her condition. Trial began on February 7, 1991. After a five-day trial, the jury was unable to reach a verdict, and the district court declared a mistrial. A second trial commenced on May 28, 1991. At the conclusion of the six-day trial, the jury returned a verdict for defendant. Plaintiff moved for a new trial, and the district court denied the motion on July 9, 1991. The present appeal ensued.

## II.

Plaintiff alleges three grounds for a new trial. First, she argues that the district court improperly permitted her expert pathologist to be impeached by evidence of a prior conviction. Second, she contends that the district court erred in refusing to permit her to rebut what she claims was surprise evidence presented by defendant in the course of the second trial. Finally, she claims that the district court improperly limited the scope of her expert's testimony. Of these three asserted grounds for a new trial, only the first need be discussed in detail.

Plaintiff's expert pathologist, Hernando Salazar, M.D., had been convicted in 1984 of the misdemeanor of willful failure to file a federal income tax return, in violation of 26 U.S.C. § 7203. Prior to calling Dr. Salazar, plaintiff filed a motion in limine to preclude defendant from introducing evidence of the conviction. After hearing argument, the court denied the motion. Plaintiff, without waiving her objection to the evidence's admissibility, then brought out the conviction on direct examination. On voir dire examination on qualifications, defendant reinforced that Dr. Salazar had pled guilty to the offense, and that he had been incarcerated for a term of six months. Defendant again referred to the conviction during closing argument. Plaintiff now contends that the denial of her motion in limine was reversible error.

Rule 609 of the Federal Rules of Evidence limits the admissibility of evidence of prior convictions for purposes of impeachment. The rule provides, in part:

> For the purposes of attacking the credibility of a witness,
>
> (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evi-

dence outweighs its prejudicial effect to the accused; and

(2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.

Fed.R.Evid. 609(a). The district court premised its conclusion that the conviction was admissible on subsection (2) of the Rule, concluding that the willful failure to file a federal income tax return was a crime involving dishonesty or false statement. In so deciding, the court relied on the four reported cases addressing the admissibility of violation of section 7203 under Rule 609(a)(2). *See Dean v. Trans World Airlines, Inc.*, 924 F.2d 805, 811 (9th Cir.1991); *United States v. Gellman*, 677 F.2d 65, 66 (11th Cir.1982); *Zukowski v. Dunton*, 650 F.2d 30, 34 (4th Cir.1981); *United States v. Klein*, 438 F.Supp. 485, 487 (S.D.N.Y.1977).

■ We disagree with the rationale of those cases, and therefore reverse. The Conference Committee that reported Rule 609(a)(2), as originally adopted, described the scope of the Rule as follows:

By the phrase "dishonesty and false statement" the Conference means crimes such as perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of crimen falsi, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully.

H.R.Conf.Rep. No. 1597, 93d Cong., 2d Sess. 9, *reprinted in* 1974 U.S.C.C.A.N. 7098, 7103. Unlike other crimes evidence of which is admissible for the purpose of impeachment, evidence of crimes involving dishonesty or false statement is automatically admissible; the district court is without discretion to weigh the prejudicial effect of admitting the evidence against its probative value. *See United States v. Wong*, 703 F.2d 65, 68 (3d Cir.), *cert. de-*

*nied*, 464 U.S. 842, 104 S.Ct. 140, 78 L.Ed.2d 132 (1983). Because the district court lacks discretion to engage in balancing, Rule 609(a)(2) must be interpreted narrowly to apply only to those crimes that, in the words of the Conference Committee, bear on a witness's propensity to testify truthfully. *See United States v. Fearwell*, 595 F.2d 771, 777 (D.C.Cir.1978).

■ As interpreted in this Circuit, section 7203 is not such a crime. In 1980, at the time of Dr. Salazar's offense, section 7203 provided:

Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return . . ., keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 1 year, or both, together with the costs of prosecution. . . .

26 U.S.C.A. § 7203 (West 1967) (superseded).[1] We have previously explored the content of section 7203's willfulness requirement in *United States v. Greenlee*, 517 F.2d 899 (3d Cir.), *cert. denied*, 423 U.S. 985, 96 S.Ct. 391, 46 L.Ed.2d 301 (1975). In that case, we rejected defendant's contention that "the evil purpose requirement demands that defendant have acted with some purpose to conceal his tax liability from the government." *Id.* at 904. Instead, we concluded: "[T]he use of terms such as 'bad purpose' does not imply that the government must prove more than that the defendant acted with a guilty mind, i.e., voluntarily and with the deliberate intent to violate the law." *Id.; see also United States v. Klee*, 494 F.2d 394, 395 (9th Cir.)

---

1. Section 7203 has been amended several times since 1980. Of the text quoted here, the most significant amendment occurred in 1982, when Congress increased the maximum fine from $10,000 to $25,000 for individuals and $100,000

for corporations. Additional provisions of section 7203, not relevant to the present case, have undergone more substantial changes. *See* 26 U.S.C. § 7203 (West Supp.1992).

(concluding that in a section 7203 prosecution the government need not prove "an intent to defraud the government, or to conceal from the government facts relevant to a determination of the accused's tax liability"), *cert. denied,* 419 U.S. 835, 95 S.Ct. 62, 42 L.Ed.2d 61 (1974). In light of the conclusion that a section 7203 defendant need not have intended to conceal his tax liability or deceive the government, we do not believe that being convicted of violating section 7203 necessarily connotes dishonesty or a false statement within the narrow ambit of Rule 609(a)(2).[2] In so concluding, we disagree with *United States v. Klein,* in which the court concluded that willful failure to file a federal income tax return involved the making of a false statement and therefore fell within Rule 609(a)(2). *See Klein,* 438 F.Supp. at 487.

■ In *United States v. Gellman,* the Eleventh Circuit appeared to provide an alternate justification for concluding that a conviction under section 7203 falls within Rule 609(a)(2), stating that violation of the statute was "sufficiently reprehensible to meet the exception of Rule 609(a)(2)." *See Gellman,* 677 F.2d at 66 (quoting *Zukowski v. Dunton,* 650 F.2d 30, 34 (4th Cir.

1981)).[3] To the extent that the *Gellman* court provided a second rationale, we decline to adopt the proposed standard. The proper test for admissibility under Rule 609(a)(2) does not measure the severity or reprehensibility of the crime, but rather focuses on the witness's propensity for falsehood, deceit, or deception. To conclude that evidence of a crime was admissible under Rule 609(a)(2) simply because the crime was reprehensible would do violence to both the text of Rule 609(a)(2) and the interpretive framework suggested by the Conference Committee.[4]

■ We conclude that the district court erred in denying plaintiff's motion in limine and permitting the impeachment of Dr. Salazar. We further conclude that the improper impeachment of a key expert witness prejudiced plaintiff. We therefore reverse and remand for a new trial.[5]

2. It is certainly possible, and perhaps even likely, that in some instances individuals who willfully fail to file federal income tax returns do so with the conscious intent to conceal their tax liability from the government. For the purposes of Rule 609(a)(2), however, the manner in which a particular defendant commits a crime is irrelevant; what matters is whether dishonesty or false statement is an element of the statutory offense. *See United States v. Lewis,* 626 F.2d 940, 946 (D.C.Cir.1980).

3. In *Zukowski,* the defendant was impeached through evidence of his "prior misdemeanor conviction for willfully failing to provide information for income tax purposes." *See Zukowski,* 650 F.2d at 34. It is not apparent from the court's opinion whether the defendant's conviction was under section 7203 or some other statute. If, however, the conviction was under section 7023, we decline to follow *Zukowski* for the same reason that we reject *Gellman.*

4. It is worth noting that because a conviction under section 7203 is not punishable by a term of imprisonment in excess of one year, a witness other than a criminal defendant who has been convicted under section 7203 may never be impeached under Rule 609(a)(1) on the basis of that conviction.

5. Because we have decided that plaintiff is entitled to a new trial on the first ground asserted on appeal, the additional arguments raised by plaintiff merit only brief mention. Plaintiff contends that the district court erred in refusing to permit her to present testimony to rebut what plaintiff regarded as surprise testimony from a defense expert. Because we rest our decision to grant a new trial on different grounds, we will not set forth in detail the complex, technical arguments that defendant's expert made at the first and second trials, nor shall we attempt to explain the subtle differences between the theories presented at the two trials. We believe defendant did, in fact, present a new theory at the second trial, and that plaintiff should have been permitted to offer rebuttal testimony. However, at a new trial, plaintiff presumably will not be surprised by the theory defendant's expert presented at the second trial, and will be prepared to present appropriate evidence in her case in chief.

Plaintiff also argues before this court that the district court erroneously limited the scope of Dr. Salazar's expert testimony. Dr. Salazar presented himself to the court as a physician and board-certified pathologist with a sub-specialty in gynecological pathology. On direct

examination, Dr. Salazar was asked if, in his opinion, plaintiff would have required a hysterectomy had her cancer been detected at a pre-invasive stage. Defendant objected to the question, and the court sustained the objection, concluding that the question was beyond the scope of Dr. Salazar's expertise. We believe that the court took an unduly restrictive view of the scope of a physician's expertise. As a general matter, a physician is entitled to render an opinion in medical fields which are outside his area of specialization; the fact that a doctor is not a specialist in a particular field goes not to the admissibility of the opinion but rather to the weight that the jury may wish to place upon it. *See Payton v. Abbott Labs*, 780 F.2d 147, 155 (1st Cir.1985); *In re Paoli R.R. Yard PCB Litigation*, 916 F.2d 829, 855–56 (3d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1584, 113 L.Ed.2d 649 (1991); *Hines v. Consolidated Rail Corp.*, 926 F.2d 262, 272–73 (3d Cir.1991). However, plaintiff was able to offer testimony from other experts on the point on which Dr. Salazar was prevented from testifying, and the point was uncontroverted at trial. Thus, whatever prejudice plaintiff suffered from the district court's ruling would appear to be minimal. Because we have determined on separate grounds that a new trial is warranted, we need not decide whether this minimal prejudice, standing alone, would be sufficient to entitle plaintiff to a new trial.