**LIGGETT GROUP INC., Plaintiff,**

v.

**BROWN & WILLIAMSON TOBACCO CORPORATION, Defendant.**

**BROWN & WILLIAMSON TOBACCO CORPORATION, Counterclaim-Plaintiff,**

v.

**LIGGETT GROUP INC. and Generic Products Corporation, Counterclaim-Defendant.**

**No. C–84–617–D.**

United States District Court, M.D. North Carolina, Durham Division.

Nov. 10, 1986.

Joel M. Craig, E.C. Bryson, Jr., Josiah S. Murray, III, Durham, N.C., Philip T. Shannon, Joseph Diamante, William H. Hogeland, Bruce Topman, Webster & Sheffield, New York City, Garret G. Rasmussen, Washington, D.C., for plaintiff.

Lennox P. McLendon, Jr., Greensboro, N.C., Raymond M. Carlson, McLean, Va., for counterclaim-defendant.

Michael L. Robinson, Norwood Robinson, George L. Little, Jr., Robert J. Lawing, James W. Armentrout, Winston-Salem, .N.C., Cowan, Liebowitz & Latman, Martin Klotz, Martin London, Martin Flumenbaum, New York City, Ernest Pepples, Louisville, Ky., for counterclaim-plaintiff.

## DISCOVERY ORDER

PAUL TREVOR SHARP, United States Magistrate.

This matter comes before the Court on three discovery motions: (1) Brown & Williamson's motion to compel discovery; (2) Brown & Williamson's motion for a protective order; and (3) Liggett's motion regarding the application of the attorney-client privilege to certain discussions. The parties have fully briefed their positions. The Court will decide the motions without calling for oral argument. *See*, Local Rule 203(c).

### 1. *Brown & Williamson's Motion to Compel Discovery.*

By motion filed October 6, 1986, Brown & Williamson seeks an order compelling Liggett to produce its expert witness, Clarence Eads, for further examination to permit Eads to answer questions concerning his knowledge of current industry competitive trends. At the initial Eads deposition, Liggett instructed the deponent not to answer questions concerning events occurring after December 31, 1985 in view of the "cutoff date" set for discovery by the Court in its Order of June 3, 1986. By that order, the Court directed:

> In this case, where ongoing injury is alleged, the end date for post-complaint

discovery is a matter very much for the discretion of the Court. In the circumstances of this case, the Court will designate December 31, 1985 as a proper end date for discovery. Documents coming into being after that date are beyond the scope of discovery, as are events occurring after that date. By using this date, the case can be fairly prepared by the parties for trial. In view of the magnitude of the case and the need to conclude fact discovery so that expert discovery can proceed, a later cutoff date would not be manageable or feasible. . . .

(Order of June 3, 1986, pp. 15–16.)

Brown & Williamson construes the order to be directed only to "fact discovery," not to discovery with respect to experts. Liggett believes the order restricts *all* discovery, so that no matter occurring after December 31, 1985 may be inquired into, even during depositions of experts.

■ Brown & Williamson's interpretation of the order is correct. The December 31, 1985 cutoff for fact discovery was established as a necessary deadline in order to make this litigation manageable. Without such a deadline, the parties would have found it difficult, if not impossible, to effectively close fact discovery and prepare discovery material to serve as the basis for the formation of expert testimony and for trial. Discovery with respect to experts does not present similar management problems. Experts may be deposed and their opinions obtained with full cross-examination during a single deposition examination. Since the parties are free to discover directly from the experts all information forming the basis for their opinions, the Court discerns no material limitation on the parties' ability to prepare to challenge such opinions at trial. In any event, there is no reason in discovery to limit the testimony of experts. If any party has an objection concerning the use of testimony, the objection may be preserved until the time of trial. In short, the Court finds no merit to Liggett's objection to the discovery with respect to Eads, and Brown & Williamson's motion is accordingly GRANTED.

2. *Brown & Williamson's Motion for a Protective Order.*

By motion filed September 26, Brown & Williamson seeks a protective order requiring the return of certain documents which Brown & Williamson claims are subject to attorney-client privilege or work-product protection but were "inadvertently" produced by Brown & Williamson to Liggett during discovery. By affidavit of counsel, Brown & Williamson presents a showing that outside counsel for Brown & Williamson recently made a final review of a single box of documents to determine if any of the documents should be produced pursuant to Rule 34 requests of Liggett, rather than being withheld upon claim of privilege or protection. Counsel divided the one box into two—one for production and the other not. A paralegal was instructed to copy documents in the "production box" and forward copies to counsel for Liggett. Through some unexplained occurrence, the documents produced to Liggett contained some documents which Brown & Williamson now claims to be privileged. The several dozen documents have been submitted to the Court for *in camera* review.

■ Ordinarily, documents produced by a party in litigation may not be "recalled" by a later claim of privilege, since any claim of privilege is generally waived by production in litigation pursuant to Rule 34. *See, O'Leary v. Purcell Co.,* 108 F.R.D. 641, 646 (M.D.N.C.1985); *Rockland Industries, Inc. v. Frank Kasmir Associates,* 470 F.Supp. 1176, 1181 (N.D.Tex. 1979); *W.R. Grace & Co. v. Pullman, Inc.,* 446 F.Supp. 771, 775 (W.D.Okl.1976); and *Underwater Storage, Inc. v. United States Rubber Co.,* 314 F.Supp. 546, 548–49 (D.D. C.1970); *see also, In re Grand Jury Proceedings,* 727 F.2d 1352 (4th Cir.1984) (waiver may be found by even "inadvertent" production under some circumstances); *Duplan Corp. v. Deering Milliken Research Corp.,* 397 F.Supp. 1146 (D.S.C. 1974) (waiver of attorney-client privilege does not require a subjectively intended act). Some courts have occasionally found, in unusual circumstances, that an inadver-

tent production of documents does not amount to a binding waiver. *See e.g., Transamerica Computer Co. v. International Business Machines Corp.,* 573 F.2d 646 (9th Cir.1978); *Lois Sportswear, U.S.A. v. Levi Strauss & Co.,* 104 F.R.D. 103 (S.D.N.Y.1985).

■■■ In the case at bar, the Court finds no special circumstances which would relieve Brown & Williamson from a finding of waiver. Document discovery in this case has been extensive, but counsel unquestionably had ample time to "screen" the single box of documents which gave rise to the production herein, and counsel have not satisfied the Court that reasonable protective measures were employed in order to safeguard claims of privilege. Waiver of privilege, in the context of production during discovery, does not require a *subjectively* intended act. It would, after all, be an unusual case in which any person released a document for the *purpose* of surrendering a recognized right. This point has been made by numerous courts. In *Duplan Corp. v. Deering Milliken, Inc., supra,* at 1162, the Court wrote:

> Plaintiff's argument that waiver requires an intentional relinquishment or abandonment of a known right has a familiar ring with regard to general contract law, but waiver, as applied to the particular subject of attorney-client privilege, may be made by implication:
>
>> A privileged person would seldom be found to waive, if his intention not to abandon could alone control the situation. There is always also the objective consideration that when his conduct touches a certain point of disclosure, fairness requires that his *privilege shall cease whether he intended that result or not.* 8 Wigmore, Evidence § 2327 (McNaughton rev. 1961). [Emphasis added].

An argument similar to that presented by plaintiff was made and rejected in *Underwater Storage, Inc. v. U.S. Rubber Co.,* 314 F.Supp. 546, 548 (D.D.C. 1970), in which the court ably put forth the reason behind the rule:

> The document in question, a letter from Mr. Wiczer to Dr. Quase, was presented by the plaintiff pursuant to a consent order for examination by the defendant. The plaintiff now claims that the production was inadvertent and involuntary or if it is deemed voluntary that the privilege is waived only as to the piece of paper but nothing else. This is an untenable position. The plaintiff turned over to his attorney the documents to be produced. This letter was among them. The Court will not look behind this objective fact to determine whether the plaintiff really intended to have the letter examined. Nor will the Court hold that the inadvertence of counsel is not chargeable to his client. Once the document was produced for inspection, it entered the public domain. Its confidentiality was breached thereby destroying the basis for the continued existence of the privilege.

Accord, *United States v. Kelsey-Hayes Wheel Co.,* 15 F.R.D. 461, 465 (E.D.Mich. 1954).

The Court is not satisfied that Brown & Williamson undertook reasonable precautions to prevent inadvertent disclosure of allegedly privileged documents in this case. *Cf. Lois Sportswear, U.S.A. v. Levi Strauss & Co., supra; Suburban Sew 'N Sweep, Inc. v. Swiss-Bernina, Inc.,* 91 F.R.D. 254 (N.D.Ill.1981) (documents placed in a trash dumpster may lose their privileged status). Only a single box of documents was involved in the document search by counsel; counsel should have exercised particular care with respect to these documents since they had previously been withheld from discovery; and there is no indication that counsel reviewed the relatively small number of documents selected for production after copying of the documents had been completed.

Finally, while Brown & Williamson asserts attorney-client privilege and work-product protection as to a number of documents, it does not carry its burden to show that privilege or protection properly

attaches to all of the documents in question. Some of the documents do not appear, at least on their face and without further explanation, to sustain claims of privilege or protection. (*See e.g.*, some of the documents in Exhibits 7, 8, 11, and 14.) Accordingly, for reasons set forth herein, Brown & Williamson's motion for a protective order is DENIED.

3. *Liggett's Motion Regarding the Applicability of the Attorney-Client Privilege.*

■ By motion filed June 23, Liggett requests an order that the attorney-client privilege does not apply to discussions held on or about February 24, 1984 between and among Douglas I. Falk, Clinton L. Hunter, and others, including Barton Freedman and Charles Lamb, in-house counsel for Brown & Williamson.[1] At the depositions of Falk and Hunter (and others), counsel for Brown & Williamson instructed the deponents not to answer certain questions concerning the February 24 discussions on the ground that the communications in question were protected by the attorney-client privilege. The Court now determines that these instructions were improper. The attorney-client privilege does not protect the February 24 communications from discovery or from use as evidence in this litigation.

The facts underlying the controversy appear to be as follows. In early 1984, Brown & Williamson began to plan for the manufacture and sale of generic cigarettes. (Beasley Deposition, pp. 9–10.) Brown & Williamson retained Design Works, Inc., an independent corporation, to design the packaging for the generic cigarettes. Design Works had done similar work for Brown & Williamson in the past. In February 1984, Brown & Williamson representatives, including Douglas Falk (Director of Special Projects), spoke to Clinton Hunter, an account executive with Design Works, regarding the packaging design for the generic cigarettes. Apparently, a meeting

concerning the project occurred on February 23, with Falk and Hunter and others in attendance. A further meeting was held on February 24. At the second meeting, Falk and Hunter were again present, along with several Brown & Williamson employees. Also present were Barton Freedman and Charles Lamb, in-house attorneys for Brown & Williamson who attended at the request of Brown & Williamson employees. (Beasley Deposition, p. 54.) The topic of discussion at both meetings was the development of the initial concept for the design of the generic packaging to be drawn by Design Works for Brown & Williamson. (Hunter Deposition, pp. 18 and 19.)

Brown & Williamson asserts that discussions held on the 24th between employees of Brown & Williamson and Curtis Hunter, an employee of Design Works, were held for the purpose of soliciting legal advice from in-house counsel and are therefore protected from discovery by the attorney-client privilege. Brown & Williamson describes Design Works as "a closely associated design agency" whose employees look to Brown & Williamson's counsel for legal advice. Brown & Williamson contends that Design Works' employee (Hunter) had to be present at the meeting with Brown & Williamson employees and attorneys in order to explain to counsel the relevant facts concerning the design project so that counsel could advise Brown & Williamson effectively on the legal consequences of those facts. Liggett, on the other hand, contends that the attorney-client privilege cannot apply since Design Works is an independent third party, and the presence of its employee at the February 24 meeting served to destroy the confidentiality which must exist in order for the attorney-client privilege to attach to the discussions. Further, Liggett argues that the privilege cannot attach to communications which, at most, formed the basis for a request for business advice rather than legal advice.

---

1. The Court previously denied without prejudice a similar motion by Liggett, finding that the motion had been so modified by Liggett between the time of its filing and the time of oral argument that Liggett should refile the motion and "start over." (*See,* Discovery Order of June 3, 1986, pp. 16–17.)

The Court concludes that Liggett should prevail on its first argument—the presence of Curtis Hunter of Design Works, Inc. at the February 24 meeting destroyed the confidentiality between attorney and client which is a necessary element of the attorney-client privilege.

In *N.C. Electric Membership Corp. v. Carolina Power & Light Co.*, 110 F.R.D. 511 (M.D.N.C.1986), this Court recently discussed the reach of the attorney-client privilege under federal law. The Court wrote:

> The attorney-client privilege recognized in the federal common law has been defined as follows:
>
> > The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.
>
> *United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357 (D.Mass.1950); *see also, Duplan Corporation v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1160 (D.S.C.1974); 4 *Moore's Federal Practice*, § 20.60[2]. The purpose of the privilege, as recently described by the Supreme Court,
>
> > is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.
>
> *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981).
>
> The attorney-client privilege protects the substance of confidential communications from client to attorney. Although the protection afforded to such communications promotes public interests, the privilege nonetheless is inconsistent with the general duty to disclose and therefore impedes investigation of the truth. *See, NLRB v. Harvey*, 349 F.2d 900, 907 (4th Cir.1965). Accordingly, the privilege must be strictly construed. *See, In re Grand Jury Proceedings (John Doe)*, 727 F.2d 1352, 1356 (4th Cir.1984); *United States v. Jones*, 696 F.2d 1069 (4th Cir.1982); *United States v. (Under Seal)*, 748 F.2d 871 (4th Cir.1984), *cert. granted sub nom, United States v. Doe*, 469 U.S. 1188, 105 S.Ct. 954, 83 L.Ed.2d 962 (1985), *appeal after remand*, 757 F.2d 600, *vacated on other grounds*, 471 U.S. 1001, 105 S.Ct. 1861, 85 L.Ed.2d 155, *on remand*, 763 F.2d 662 (4th Cir.1985). Further, the burden of persuasion on each of the elements of the privilege is clearly upon the proponent....

*Id.* at 513.

For communications between an attorney and client (Freedman/Lamb and Brown & Williamson, here) to be privileged, they must be confidential. *In re Grand Jury Proceedings, supra* at 1355. Ordinarily, the presence of a third party destroys the element of confidentiality and, therefore, any claim of privilege. *See generally*, 8 Wright & Miller *Federal Practice and Procedure*, § 2017; *see also, United States v. Brown*, 478 F.2d 1038, 1040 (7th Cir.1973); *In re Walsh*, 623 F.2d 489, 495 (7th Cir.), *cert. denied*, 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980); and *United States v. Landof*, 591 F.2d 36, 39 (9th Cir.1978). If the proponent of the privilege can show, however, that the third party present during the communications was an "agent" of the proponent, the privilege may remain intact. *See, United States v. Landof, supra; Foseco International Limited v.*

*Fireline,* 546 F.Supp. 22 (N.D. Ohio 1982) (patent agent acting on corporation's behalf); *United States v. Kovel,* 296 F.2d 918 (2d Cir.1961) (accountants).

The Court finds that Brown & Williamson has not carried its burden to show that Design Works, Inc., was, in manner sufficient when viewed in light of the policies of the attorney-client privilege, an "agent" of Brown & Williamson. To the contrary, Design Works is a completely independent corporation. The fact that it had a "working relationship" with Brown & Williamson is not enough. Design Works was not a joint venturer in the enterprise of manufacture and sale of generic cigarettes. The discussions of February 24 were simply business negotiations and dealings, between separate companies. The presence of Brown & Williamson's attorneys at the meeting, even if the intention of counsel was to be informed of the dealings between the two companies in order to be able to render legal advice to Brown & Williamson employees, does not serve to place the discussions of February 24 behind a cloak of evidentiary privilege.

Accordingly, the Court determines that the presence of Clinton Hunter at the February 24 meeting destroyed the claim of privilege which Brown & Williamson seeks to invoke. The February 24 discussions are fully subject to discovery. Since the general discovery period in this case has already expired, the Court will give specific leave to Liggett to redepose Falk and Hunter at anytime within the next forty-five (45) days.

IT IS SO ORDERED.