Lee SCOTT, Appellant,

v.

Paul JAMES and Robert Siscel, Appellees.

No. 89–2059.

United States Court of Appeals, Eighth Circuit.

Submitted March 14, 1990.

Decided May 3, 1990.

Anna Marie Piana, St. Louis, Mo., for appellant.

Edward J. Hanlon, St. Louis, Mo., for appellees.

Before JOHN R. GIBSON, Circuit Judge, BRIGHT, Senior Circuit Judge, and MAGILL, Circuit Judge.

BRIGHT, Senior Circuit Judge.

In this 42 U.S.C. § 1983 action, plaintiff Lee Scott appeals from the district court's [1] judgment entered in accordance with the jury's verdict, dismissing his claim against St. Louis police officers Paul James and Robert Siscel. Scott claimed that officers James and Siscel used unreasonable force

1. The Honorable George F. Gunn, Jr., United States District Judge for the Eastern District of Missouri.

while apprehending him and conspired to falsely accuse him of firing a gun at them. On appeal, Scott contends that a new trial should be granted because (1) the district court improperly denied Scott's motion for a continuance, (2) the court permitted defense counsel to make improper remarks during closing argument, (3) the court permitted the members of the jury venire to see Scott in handcuffs, (4) the court made several erroneous evidentiary rulings and (5) the jury venire contained no black jurors. We reject these contentions and affirm.

## I. BACKGROUND

On the evening of March 12, 1986, St. Louis police officers Paul James and Robert Siscel, the defendants in this action, were on duty in an unmarked police car when they observed an unlighted car driven by plaintiff Lee Scott travelling at a high rate of speed. Their suspicions aroused, the officers began to follow Scott's car. A short time later, when Scott ran a red light, the officers activated their siren and gave chase.

Scott attempted to elude the officers by taking a sharp left turn. Instead, the car spun around, struck two parked cars and came to a halt. The officers pulled up behind the collision, drew their service revolvers and approached Scott's car. During their approach, they saw the back window of Scott's car shatter and observed a flash of light inside the car which they believed to be the muzzle flash of a gun being fired. The officers responded by firing one shot apiece at Scott and his passenger, Eddie Connors. At that point, Scott's car took off again and the chase resumed.

During this second chase, Scott changed directions several times, struck three parked cars and ran a series of stop signs. The officers caught up with Scott and Connors when Scott's car ran into a building after jumping a curb. Connors came out of the car with a dark object in his hand. Fearing the object to be a gun, officer Siscel fired two shots at Connors. Scott stepped out of the car and placed his arm across the roof of the vehicle, as if steady-

ing a gun. In response, officer James fired three shots at Scott. Undaunted, both Scott and Connors attempted another escape on foot. With the assistance of other police officers, however, officers James and Siscel soon apprehended Scott and Connors.

The police later learned that Scott and Connors had participated in the robbery of a woman named Connie LeMastus just prior to the first chase. Scott pleaded guilty to robbery for his role in the offense against Connie LeMastus and received a ten-year sentence. While in prison, Scott brought this action under 42 U.S.C. § 1983 alleging that officers James and Siscel had applied excessive force in the course of apprehending him and that they had conspired to falsely accuse him of firing a gun at them. After a two-day trial, the jury returned a verdict for the defendants and the court entered judgment. The court subsequently denied Scott's motion for a new trial. This timely appeal followed.

## II. DISCUSSION

■ Scott first argues that the trial court abused its discretion in denying his motion for a continuance. Scott filed this motion on March 13, 1989, the day of the trial, requesting time to have a bullet extracted from his hand. Scott's treating physician discovered the bullet on March 7, 1989, during a physical examination requested by Scott's counsel. Scott contends that with additional time he would have been able to prove that the bullet in his hand came from one of the defendants' service revolvers. Scott also contends that additional time would have enabled him to obtain an expert's opinion on the extent of the damage to his hand.

The district court properly denied Scott's motion for a continuance. First, although Scott maintained from the beginning that he had been shot in the right hand, he waited until the week before the trial, three years after the incident, to have the hand examined. Moreover, officers James' and Siscel's testimony that they shot at Scott with the intent to kill left the jury with only the issue of whether the police actions were justified. Thus, the source of the

bullet in Scott's hand bore no relevance to the issue of liability. Similarly, any proof relating to the extent of damages would not affect the outcome of this case because Scott failed to establish liability.

◼ Scott next argues that defense counsel's improper remarks during closing argument warrant a new trial. Defense counsel stated over objection during closing argument that prisoners can file civil rights lawsuits for free and obtain free legal representation.[2] Scott contends that these remarks prejudiced him by creating the impression that the legal system places no checks on frivolous or abusive lawsuits by prisoners. While we strongly disapprove of defense counsel's remarks, we will not reverse because the record clearly supports the jury's verdict.

◼ Statements made in closing arguments must be plainly unwarranted and clearly injurious to constitute reversible error. *VanSkike v. Union Pacific Railroad*, 725 F.2d 1146, 1149 (8th Cir.1984). In this case, defense counsel made remarks unconnected to the evidence or to the applicable law, and the argument served no purpose other than to unfairly prejudice a defendant without funds.

Nevertheless, after reviewing the record as a whole, we cannot say that defense counsel's remarks resulted in prejudice sufficient to warrant a new trial. The trial focused on whether the circumstances justified the amount of force used by the defendants to apprehend Scott. Scott introduced only his own testimony that on the night of the incident he had observed the speed limit, committed no traffic infractions and that both he and Connors had been unarmed. Defendants took the stand, however, and contradicted Scott's testimony. In addition, robbery victim Connie LeMastus testified that Connors had carried either a knife or a gun and that Scott and Connors raced away from the scene of the crime in an unlighted car.

Accordingly, we hold that the plaintiff has not demonstrated sufficient prejudice from defense counsel's improper remarks to warrant a new trial. *See* Fed.R.Civ.P. 61. Moreover, counsel for Scott could have responded in rebuttal with a strong statement in defense of a system which does not close the courthouse doors to the impoverished.

◼ Scott next argues that the trial court erroneously permitted the jury to observe him in handcuffs and that this error warrants a new trial. We need not address this issue because Scott adduces no evidence in support of his assertion that the jury observed him in handcuffs. Moreover, the following statement of Scott's counsel at trial contradicts his assertion: "He had [handcuffs] on when I left, when he came back he didn't. I don't know if the jury saw it or not, but I do know he has his prison uniform on." Transcript at 8.[3] Additionally, even if Scott could support this assertion, his own trial testimony, to the effect that he had been brought to court from the correctional institution, rendered harmless any possible prejudice resulting from his momentary appearance in handcuffs.

---

2. The following exchange took place during defense counsel's closing argument:

> Civil Rights Act was meant to stop certain abuses of people in their official power. This was I guess the Klu [sic] Klux Klan, the lynchings in the south which did occur years back, that's what it was meant to prevent. In fact, we encourage these type suits. If a prisoner such as Mr. Scott wants to file a lawsuit he can sit down in a cell and write out in long hand what he says these police officers did and he can send it down here by mail and if you don't have any money—
> MS. PIANA [Scott's counsel]: I object—
> MR. FITZGIBBON [defense counsel]:—it's free.

> MS. PIANA:—this is irrelevant to this cause of action.
> THE COURT: This is closing argument.
> MR. FITZGIBBON: Then if you don't have a lawyer the Court appoints one for you free in order to encourage people to do not—who do not have money to file lawsuits.
> The only thing is and what irritates me is if you come in here let's have something of substance, let's have a constitutional violation, show us.
> Trial Transcript at 302–03.

3. The record indicates that the trial court permitted Scott to change into civilian clothes and offered to give a cautionary instruction to the jury.

■ Scott next argues that several erroneous evidentiary rulings by the trial court warrant a new trial. We review evidentiary rulings only for abuse of discretion. *United States v. Ball,* 868 F.2d 984, 987 (8th Cir.1989). From our reading of the record, we conclude that the district court did not exceed its discretion in ruling on the admissibility of evidence.

Finally, Scott argues that the complete absence of black jurors from the jury venire violated his sixth amendment right to a jury drawn from a fair cross section of the community. In *Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979), a criminal case, the Supreme Court set forth the requirements for establishing a violation of the sixth amendment right to a jury drawn from a fair cross section of the community. Assuming without deciding that the *Duren* analysis applies in civil cases,[4] Scott has failed to demonstrate that his right has been violated. Under *Duren,* Scott has to show, *inter alia,* that the underrepresentation on the jury venire of a particular group in the community resulted from a systematic exclusion of that group in the jury selection process. *Id.* at 364, 99 S.Ct. at 664. Scott has not even attempted to make this showing. We therefore reject his argument.[5] *See United States v. Shurn,* 849 F.2d 1090, 1096 (8th Cir.1988).

## III. CONCLUSION

For the reasons discussed above, the judgment of the district court is affirmed.

---

4. In *Thiel v. Southern Pacific Co.,* 328 U.S. 217, 220, 66 S.Ct. 984, 985, 90 L.Ed. 1181 (1946), the Supreme Court stated that "[t]he American tradition of trial by jury, considered in connection with either criminal or civil proceedings, necessarily contemplates an impartial jury drawn from a cross-section of the community." Nevertheless, no court has decided whether *Duren* applies in civil cases. *But cf. Reynolds v. City of*

*Little Rock,* 893 F.2d 1004, 1007–09 (8th Cir. 1990) (*Batson* rule applies to government counsel in section 1983 case).

5. In addition, Scott has presented no evidence to support his assertion that the jury venire contained no black jurors.