## In re GRAND JURY INVESTIGATION.

### No. M–92–12.

United States District Court,
M.D. North Carolina.

March 24, 1992.

Michael G. Scheininger, McKenna & Cueno, Washington, D.C., and Roger W. Smith, Tharrington, Smith & Hargrove, Raleigh, N.C., for John Doe Co.

Scott W. MacKay, Trial Atty., U.S. Dept. of Justice, Crim. Div., Fraud Section, Washington, D.C., and Sandra J. Hairston, Asst. U.S. Atty. and Robert H. Edmunds, Jr., U.S. Atty., Greensboro, N.C., for the Government.

## ORDER

SHARP, United States Magistrate Judge.

This matter comes before the court on a motion for a protective order filed by the John Doe Company. The pleadings and the identity of the movant are under seal in accordance with the secrecy provisions of Rule 6, Fed.R.Crim.P., relating to grand jury proceedings.

In August 1991, the John Doe Company was served with three grand jury subpoenas *duces tecum.* The Company has produced over 22,000 pages of documents in response to the subpoenas. It now seeks a protective order protecting from discovery, and providing for the return of, 18 privileged documents that it inadvertently produced to the government. The Company asserts attorney-client privilege as to the documents.

The United States opposes the request for a protective order. It argues that the Company (1) has failed to meet its burden of showing that the 18 documents are covered by the attorney-client privilege, and (2) has waived any privilege by reason of disclosure in response to the subpoenas. The parties have fully briefed their positions, and the court will rule on the motion without calling for oral argument, finding that the motion papers are sufficient to fully develop the record and the argument. *See* Local Rule 203(c).

Disputes arising from the inadvertent disclosure of privileged documents during legal proceedings are infrequent, but not rare, occurrences. Decisions from this and other courts resolving these disputes generally turn on close examination of the facts surrounding the inadvertent disclosure. For that reason, the court begins its analysis with a detailed summary of facts.

## FACTS

On August 23, 1991, the John Doe Company was served with three grand jury

subpoenas *duces tecum,* calling for records of three divisions of the Company. These divisions no longer exist. The records of one former division are physically located at the site of another division; the records of the other two are scattered throughout the Company, making their retrieval more time-consuming.[1]

As attested to by an attorney representing the Company, the Company assigned a team, consisting of two outside attorneys and a paralegal of the Company, to review potentially responsive documents collected by the Company. (*See* Affidavit of Janice Davis, Exhibit 2 to the Brief filed February 3, 1992.) Over a three-month period, this team reviewed approximately 300,000 pages of documents. Documents were reviewed by the team to determine their responsiveness to the subpoenas. Responsive documents were further reviewed by a team member, in the presence of the senior team attorney (who has "seven years experience in conducting large document productions efforts"), to determine if they were privileged. Documents of questionable relevance or privilege were referred to the senior attorney on the team for a final decision. Each document deemed to be privileged was tagged by stapling to it a red slip of paper. The senior attorney "double checked" the work of those assisting in the review to make certain that privileged documents would not be produced to the government. (*See* Affidavit of Janice Davis, ¶ 4.)

The red-tagged documents and responsive documents were then assembled and photocopied under the direction of the paralegal member of the review team. Copies of the red-tagged documents were set aside so that counsel would have a complete set of privileged documents. The original red-tagged documents were segregated. The original responsive documents were organized according to the requests of the subpoenas. Documents assembled for production were reviewed once again to confirm that privileged documents had been removed. The original responsive documents were then bates-stamped. Three copies of the responsive, bates-stamped documents were made. (*See* Affidavit of Deborah Reding, paralegal, Exhibit 2 to the Brief of February 3, 1992.)

The original and one copy of the bates-stamped documents were delivered to the senior attorney on the review team. She performed another review by checking a representative sample of documents, by subpoena paragraph, to evaluate the adequacy of the production. (*See* Affidavit of Janice Davis, ¶ 7.) The original documents were then (in three installments, as they became ready) shipped to Stephen Miller, the Defense Criminal Investigative Service, Special Agent in charge of the investigation before the grand jury.

The grand jury subpoenas originally commanded that documents be produced by September 30, 1991. As a result of discussions between counsel for the Company and the prosecutor for the United States, however, it was agreed that the Company would make an initial document production on October 28, 1991, and would thereafter continue to make periodic productions until all known responsive documents were produced. No final deadline or return date for the subpoenas was established under the parties' agreement.

The Company made a first partial document production on October 25, 1991; it made subsequent productions on November 14 and December 9. In connection with the November 14 production, Special Agent Miller noticed that, contrary to the Company's transmittal letter, the Company had actually produced two boxes of documents designated "Box 6" and none designated "Box 7." The documents in one "Box 6" were originals, as requested by the subpoenas, while the second "Box 6" contained copies of the same documents, many of which had green and yellow pieces of paper stapled to them and which were marked with annotations such as "relevant" or "highly relevant." The following day, Special Agent Miller received a telephone call from counsel for the Company. That coun-

---

**1.** To this date, all documents produced by the Company have been in response solely to the subpoena addressed to the first division described above.

sel advised Special Agent Miller that the second "Box 6" (the one containing some documents with green and yellow tags) was for the Company's files and had accidently been sent in lieu of "Box 7," which was for the grand jury. At counsel's request, the government returned the second "Box 6" in exchange for "Box 7."

On January 2, 1992, counsel for the John Doe Company discovered that a single privileged document had been produced to the government investigator during the three partial productions described above. On January 7, counsel contacted the appropriate attorney within the Department of Justice Criminal Division. Company counsel identified the document, advised of its inadvertent disclosure, and requested its return. While the attorney for the government considered this request, counsel for the Company re-reviewed the documents produced to the government, and identified nine other privileged documents that were inadvertently produced. Thereafter, counsel identified eight more inadvertently produced documents, for a total of eighteen. On January 31, the government advised the Company that it would retain the documents in question for possible presentation to the grand jury. On February 3, the Company filed its motion for a protective order.

## DISCUSSION

The first issue before the court is whether the 18 documents in question are covered by the attorney-client privilege. If they are, a second issue arises. The Court must determine whether the privilege has been waived by inadvertent production in response to the grand jury subpoenas.

a. *Are the Documents in Question Covered by the Attorney–Client Privilege?*

In an affidavit attached to its reply brief, the Company sets out the predicate facts which demonstrate the privileged nature of the 18 documents. Nonetheless, in view of the importance of the issues raised in this matter, the court called for submission of the documents for *in camera* review.

Having conducted the *in camera* review, the court finds that the Company has carried its burden to show that all 18 documents are in fact covered by the attorney-client privilege. The descriptions of the documents given by the Company in its reply brief accurately reflect the nature of the documents and the confidential, attorney-client communications contained therein. The documents are therefore protected from the grand jury subpoenas unless the attorney-client privilege has been waived by reason of inadvertent disclosure.

b. *Has the Attorney–Client Privilege Been Waived by Inadvertent Disclosure?*

Federal district courts in the several circuits have developed three distinct lines of authority on the question of whether inadvertent disclosure during discovery proceedings causes a waiver of the attorney-client privilege. On one extreme, some courts hold that inadvertent disclosure *always* causes a waiver because once confidentiality is lost the privilege cannot be restored. *See, e.g., International Digital Systems Corporation v. Digital Equipment Corporation,* 120 F.R.D. 445 (D.Mass.1988). On the other extreme, some courts hold that inadvertent disclosure *never* causes a waiver because only intentional relinquishment of a known right may constitute a waiver. *See, e.g., Georgetown Manor v. Ethan Allen,* 753 F.Supp. 936 (S.D.Fla.1991). Other district courts apply a "balancing test" which requires the court to make a case-by-case determination of waiver based upon several factors, including the diligence the party claiming privilege exercised in seeking to maintain the confidentiality of the documents.

This district court has applied the balancing test for determination of waiver. In *Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc.,* 116 F.R.D. 46 (M.D.N.C.1987), Magistrate Judge Russell A. Eliason applied a five-factor test to find waiver of the privilege under the facts of the case before him. As enunciated in *Parkway Gallery Furniture,* the test calls for the court to consider the following factors: (1) the reasonableness of the precautions taken to prevent

inadvertent disclosure in view of the extent of the document productions; (2) the number of inadvertent disclosures; (3) the extent of the disclosure; (4) any delay and measures taken to rectify the disclosure; and (5) whether the overriding interests of justice would or would not be served by relieving a party of its error. 116 F.R.D. at 50. *See also Liggett Group v. Brown & Williamson Tobacco Corp.,* 116 F.R.D. 205 (M.D.N.C.1986).

The Eastern District of Virginia, per District Judge Ellis, has adopted the five-factor test, as well. *See F.D.I.C. v. Marine Midland Realty Credit Corp.,* 138 F.R.D. 479 (E.D.Va.1991). In *Marine Midland,* Judge Ellis described the strict rules of "non-waiver" and "waiver." He then concluded that the Fourth Circuit Court of Appeals apparently has adopted a middle-ground rule. He wrote:

> The contrast of these two extreme rules points persuasively to the merit of a rule closer to some Aristotelian mean. It is just such a rule that the Fourth Circuit apparently has adopted. In *In re Grand Jury Proceedings,* 727 F.2d 1352, 1356 (1984), Judge Russell, speaking for a unanimous panel, noted that documents might lose their privileged status if "the [disclosing] party did not 'take reasonable steps to insure and maintain their confidentiality.'" (*quoting Suburban Sew 'n Sweep, Inc. v. Swiss–Bernina, Inc.,* 91 F.R.D. 254, 258–59 (N.D.Ill.1981) (privilege waived when documents were placed in trash)). This rule is grounded in the notion that inadvertent disclosure is a species of waiver and must be analyzed in that light. Waivers must typically be intentional or knowing acts. Inadvertent disclosures are, by definition, unintentional acts, but disclosures may occur under circumstances of such extreme or gross negligence as to warrant deeming the act of disclosure to be intentional. Put another way, "[i]t is not too much to insist that if a client wishes to preserve the privilege under such circumstances, he must take some affirmative action to preserve confidentiality.... Taking or failing to take precautions may be considered as bearing on intent."

727 F.2d 1352 (*quoting In re Horowitz,* 482 F.2d 72, 82 (2d Cir.), *cert. denied,* 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86, *reh. denied,* 414 U.S. 1052, 94 S.Ct. 556, 38 L.Ed.2d 340 (1973) (letters between party and his lawyer sent to accountant were deemed not confidential because they were sent and handled in same manner as other non-confidential business records)). Thus, many courts in this circuit and elsewhere have concluded that inadvertent disclosure may constitute a waiver of the privilege where the circumstances of the disclosure reflect gross negligence or a failure to take reasonable precautions to avoid the disclosure.

138 F.R.D. at 482 (footnotes omitted).

The court is persuaded, on the strength of *Parkway Gallery Furniture* and *Marine Midland,* and in light of the language appearing in *In re Grand Jury Proceedings,* 727 F.2d 1352, 1356 (4th Cir.1984), that the multi-factor test for determination of waiver is the proper rule. Accordingly, the court will analyze each of the factors in light of the facts of this case.

*1. The Reasonableness of the Precautions Taken to Prevent Inadvertent Disclosure.*

As the summary of facts shows, the John Doe Company established several layers of review before producing documents in response to the subpoenas. During the most critical review for privileged documents, a company paralegal and an outside, junior attorney worked with and under the supervision of an outside, senior attorney who was well experienced in large-scale document productions. Once the privileged documents were separated out, the senior attorney checked the accuracy of the selections to be sure that documents marked privileged were not produced. The copying phase of the production was appropriately supervised, and outside counsel made a final review of a sample of the documents designated for production before the documents were delivered to the government.

A large volume of documents, approximately 300,000, were screened by the review team. The team worked under mod-

erate time pressure, although no ultimate deadline for the production of all documents was established. The Company was under an obligation to make its first production by October 28, 1991 (two months after the subpoenas were served), and to thereafter supplement its response periodically.

The court observes that what is required of a party producing documents is *reasonable* precaution to avoid inadvertent disclosure of privileged documents. Obviously, if *perfect* precaution were required, the court would hardly be employing a "balancing test," but would instead be applying a strict rule of waiver. In evaluating the precautions taken by the Company in the case at bar, the court finds it instructive to review the circumstances in other cases of inadvertent disclosure.

In *Liggett Group,* 116 F.R.D. at 208, this court found the precautions taken in document production to be inadequate where counsel had ample time to review a single box of documents, but nonetheless produced several dozen privileged documents. Of particular significance to the court was the fact that this box had previously been withheld from discovery and therefore should have merited heightened scrutiny. Counsel made no second review of any sort of the small number of documents selected for production.

In *Parkway Gallery Furniture,* 116 F.R.D. at 51, this court found the disclosing party's precautions to be commendable, but not sufficient. The court noted that no time constraints were applicable to the production. The court found that the producing party deviated from its usual practice of performing a second review of documents after they were copied but before they were sent to the opposing party. The court observed that "[w]hen large numbers of documents are involved, a post-designation review may likely be necessary." *Id.*

In *Marine Midland,* 138 F.R.D. at 483, the district court noted that the producing party had used only the efforts of two persons for one day to screen tens of thousands of documents for production. The court found this manifestly inadequate effort to weigh heavily in favor of finding waiver of the attorney-client privilege.

The facts in this case distinguish it readily from *Liggett Group* and *Marine Midland* where precautions were drastically inadequate under the particular circumstances of the productions. The case is closer to the situation in *Parkway Gallery Furniture* in that an obviously well-planned and diligent effort to screen for privileged documents was undertaken. Here, a large number of documents (22,-000) were actually produced, nearly twice as many as in *Parkway Gallery Furniture.* Significantly, in this case, a review team made a second review of the documents for production to look for tagged documents, and a senior attorney made a final review of a representative sample of the documents, by subpoena paragraph.

The precautions taken by a party against inadvertent disclosure are only one factor of five to be considered by the court. The court is satisfied that the precautions here were substantially better than in *Liggett Group* and *Marine Midland* and significantly better than in *Parkway Gallery Furniture.* In the court's view, the precautions were reasonable and adequate.[2]

2. *The Number of Inadvertent Disclosures.*

The number of privileged documents inadvertently produced is a separate factor under the five-factor test, although it probably has its greatest probative value in determining the reasonableness of the precautions taken during the document production (factor one). The John Doe Company asserts privilege as to 18 documents out of the 22,000 pages it has produced, after review of approximately 300,000 pages. These facts should be assessed in light of the guidance afforded in *Parkway Gallery Furniture* that "[a] large number of inad-

---

**2.** The government argues that the Company's erroneous production of two "Box[es] 6" indicates an inadequate review procedure. The court finds this argument unpersuasive. The shipping of boxes was not a part of the review process itself. The second "Box 6" did not contain any inadvertently produced privileged documents that were not also in the first "Box 6."

vertent disclosures in comparison to the number of documents reviewed shows lax, careless, and inadequate procedures." 116 F.R.D. at 51.

In *Liggett Group,* where waiver was found, the producing party inadvertently produced several dozen documents out of a single box of documents. In contrast, in *Lois Sportswear, USA v. Levi Strauss & Co.,* 104 F.R.D. 103 (S.D.N.Y.1985), 22 privileged documents were inadvertently produced out of 3,000 copied and 16,000 reviewed, and no waiver was found. In *Kansas–Nebraska Natural Gas Co. v. Marathon Oil,* 109 F.R.D. 12 (D.Neb.1984), the plaintiff inadvertently produced one privileged document out of 75,000 produced. The court found no waiver. *See also Monarch Cement Co. v. Lone Star Indus., Inc.,* 132 F.R.D. 558 (D.Kan.1990) (no waiver where eight pages of privileged documents were inadvertently disclosed out of 9,500 pages produced).

The low ratio here, 18 documents out of 300,000 pages reviewed, is not, in the court's view, suggestive of inadequate precautions.

### 3. *The Extent of the Disclosure.*

The disclosure made by the John Doe Company in this case was complete; the Company actually turned the documents over to an investigator for the government. This is not, therefore, a case of partial disclosure "resulting from glancing at an open file drawer or designating documents for copying ... when the party does not know the essence of the document's contents." *Parkway Gallery Furniture,* 116 F.R.D. at 52.

The concern of the court, and the reason for consideration of this factor, is whether any meaningful confidentiality can be restored. This concern has been addressed in other cases. In *Hartford Fire Ins. Co. v. Garvey,* 109 F.R.D. 323, 330 (N.D.Cal. 1985), the district court explained that the "focus [is] on whether there still exists sufficient confidentiality that the court can preserve the privileged nature of the documents despite the disclosure." As stated by this court in *Parkway Gallery Furniture,* "[w]hen disclosure is complete, a

court order cannot restore confidentiality and, at best, can only attempt to restrain further erosion." 116 F.R.D. at 52.

In the case at bar, the inadvertently disclosed documents, although known to the government investigator, have not worked their way into the fabric of the case. They have not been presented to the grand jury. There is no indication that they have been shown to witnesses or to experts. This case differs from the circumstances in *In re Grand Jury Investigation of Ocean Transport,* 604 F.2d 672 (D.C.Cir.), *cert. denied,* 444 U.S. 915, 100 S.Ct. 229, 62 L.Ed.2d 169 (1979), where the Court of Appeals for the District of Columbia Circuit found that it would be "unfair and unrealistic" to find privilege where the documents had been used by the government for several years and the grand jury was familiar with the documents. *See also Marine Midland,* 138 F.R.D. at 480 (inadvertently disclosed document marked as an exhibit at a deposition), and *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co., Inc.,* 132 F.R.D. 204 (N.D.Ind.1990) (document already used in other discovery including the depositions of a party's employees).

Since the documents have not reached the grand jury, the intended destination under the subpoenas, confidentiality can in some measure be restored, or at least further erosion can be prevented. Of course, the minds of the government attorney and investigator cannot be expunged, but the documents can be protected from becoming, in themselves, evidence in the case. The restoration of privilege that would be effected by a court order would not be meaningless or an empty gesture. In the court's evaluation, this factor, the extent of disclosure, does not compel a finding of waiver if other factors weigh in favor of non-waiver. *See Parkway Gallery Furniture,* 116 F.R.D. at 51–52 (where disclosure is complete, a very strong showing with respect to other factors may sustain a finding of non-waiver).

### 4. *Any Delay and Measures Taken to Rectify the Disclosure.*

Under the fourth factor, the court is called upon to examine whether the disclos-

ing party took immediate measures to remedy the inadvertent disclosure before its adversary significantly relied upon the privileged material to develop its case. *See Hartford Fire Ins. Co. v. Garvey,* 109 F.R.D. at 332; *Lois Sportswear, USA, Inc. v. Levi Strauss & Co.,* 104 F.R.D. at 105.

Here, the John Doe Company discovered its error with respect to a single document within a reasonable period of time after production, in fact while production was (and apparently still is) ongoing. It immediately contacted the attorney for the government. Thereafter, it worked with reasonable dispatch to re-review all the documents produced and, by that process, identified 17 other privileged documents inadvertently produced. After requesting return of the documents, and being informed by the government that return would be declined upon grounds of apparent waiver, the Company immediately filed its motion for a protective order.

The court considers the fourth factor to be essentially neutral under the facts of this case. The Company acted with reasonable diligence. Certainly this is not a case where, even after being alerted to an inadvertent disclosure, the disclosing party continued to use lax and inadequate production procedures. *Cf. Marine Midland,* 138 F.R.D. at 480 (after learning of a first disclosure of a privileged document, the disclosing party produced another copy of the same document in a document production two days later).

### 5. *The Overriding Interests of Justice.*

In some cases, a broad test of "fairness" or "the interests of justice" proves to be determinative. For example, in *Bud Antle, Inc. v. Grow–Tech, Inc.,* 131 F.R.D. 179 (N.D.Cal.1990), the court emphasized that fairness required a finding of waiver because the defendants had analyzed the inadvertently produced privileged letter, had possibly disclosed it to experts, and had shown a strong reliance on it for purposes of their defense. In *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co., Inc.,* 132 F.R.D. 204, 209 (N.D.Ind.1990), the court found waiver because fairness required use by the plaintiff of an inadvert-

ently produced letter since it had already been used in other discovery procedures including the depositions of defendant's employees. On the other hand, the district court in *Kansas City Power & Light Co. v. Pittsburg & Midway Coal Mining Co.,* 133 F.R.D. 171, 174 (D.Kan.1989) found that the interests of justice weighed in favor of finding non-waiver when the defendant failed to demonstrate that it had relied significantly on documents inadvertently disclosed by the plaintiff.

There is no showing in this case that the disclosed documents have been seen by witnesses or experts in any proceeding, and no showing of important reliance by the government. Instead, the parties argue the fairness issue on a more abstract level. The government emphasizes that the attorney-client privilege impedes the development of the truth, *see generally Marine Midland,* 138 F.R.D. at 483, and that its application would interfere with important processes of the grand jury. The Company argues the important public policy foundation of the attorney-client privilege, the need for the advocate to know all that relates to the client's need for legal advice. *See generally Trammel v. United States,* 445 U.S. 40, 51, 100 S.Ct. 906, 912, 63 L.Ed.2d 186 (1980).

Fairness is a broad-brush test. The court does not identify any facts in this case that place fairness squarely on either side of the dispute. There is the always-present collision of the policies behind the privilege and the general principle that there exists a duty to disclose evidence. *See NLRB v. Harvey,* 349 F.2d 900, 907 (4th Cir.1965). But that tension does not mandate a finding of either waiver or non-waiver in this case.

## CONCLUSION

In responding to the grand jury subpoenas, the John Doe Company took adequate precautions against inadvertent disclosure of documents protected by the attorney-client privilege. (Factor 1.) A low ratio of privileged documents, 18 out of 300,000 reviewed, was actually produced by the Company. (Factor 2.) While disclosure

was complete in the sense that representatives of the government have fully reviewed the documents, a measure of confidentiality can effectively be protected from erosion since the documents have not been shown to the grand jury, the body that issued the subpoenas for production. (Factor 3.) The John Doe Company acted with reasonable dispatch in discovering the inadvertent disclosures and thereafter acted immediately in seeking return of the documents. (Factor 4.) And broad concepts of fairness or the interests of justice do not require a finding for either party before the court. (Factor 5.) Weighing these factors, with the adequacy of the precautions taken by the disclosing party being the most significant here, the court finds that no waiver should be found. The John Doe Company has carried its burden to show privilege and the lack of waiver under the test adopted by this court in *Parkway Gallery Furniture.*

Accordingly, IT IS ORDERED that the government shall, within five (5) business days of this order, return to the John Doe Company all copies (including any originals) of the 18 documents identified in the Company's motion for a protective order. The Clerk shall forthwith return the *in camera* documents to counsel for the Company.

